GEORGE WILLIAM PARKER, Plaintiff-Appellant, *v.* De WITT COUNTY HOUSING AUTHORITY, Defendant-Appellee.

Fourth District  No. 13891

Opinion filed February 17, 1978.—Rehearing denied March 31, 1978.

Herrick, Rudasill & Moss, of Clinton (Ray Moss, of counsel), for appellant.

Fred B. Moore, of Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Plaintiff, George Parker, brought suit against the defendant, DeWitt County Housing Authority, for personal injuries resulting from a fall he allegedly took caused by stepping in a hole on defendant's property. The jury returned a $40,000 verdict for the plaintiff and the trial court granted that portion of defendant's post-trial motion seeking a new trial. Plaintiff then filed a petition for leave to appeal from the new trial order.

Defendant is the owner of Webster Apartments in Clinton, Illinois. On January 17, 1973, plaintiff came to the Webster Apartments with his ex-wife, Janet Parker, and Alice Curry. Both Ms. Parker and Ms. Curry lived in the Webster Apartments, and the plaintiff had moved out a month prior due to his divorce. Upon arrival, the car was parked in the parking lot and

the three got out. Ms. Parker and Ms. Curry took a path from the lot towards the apartment buildings. Plaintiff, following behind the women, testified that he stepped into a hole, twisted and fell, thereby aggravating a pre-existing back problem and causing the personal injury which is the subject of this lawsuit. It was dark at the time of the alleged fall and plaintiff was familiar with the vicinity. He knew that there was a drain located there but testified that he had never before seen the hole which at the time of the fall surrounded the drain.

Plaintiff described the drain as approximately 12 inches in diameter with a washed-out area about 6 inches surrounding the drain leaving the lip of the drain 2 to 3 inches above the level of the ground. He testified that the ground was relatively dry the evening of his fall. In addition, he testified that he had been unable to work since the accident and that he had been earning $7,000 a year when he last worked. Plaintiff was 36 years old at the time of trial.

Neither Ms. Parker nor Ms. Curry saw plaintiff fall, and Ms. Parker agreed on cross-examination that plaintiff could have tripped over the curb which was only a few feet from the drain. Plaintiff, Ms. Parker, and Ms. Curry all testified that they had never heard talk or complaints concerning the hole surrounding the drain. Like the plaintiff, Ms. Parker was unable to remember even seeing the hole before plaintiff's accident although she was aware of the drain. She did corroborate the fact of the fall and that she saw plaintiff lying on the ground near the drain. When he got up, he told her that he had tripped on the drain and complained that his back hurt.

Testimony of plaintiff's witness, Bill Taylor, reiterated plaintiff's description of the hole surrounding the drain, but Taylor was unable to state whether his recollection was based on observation before or after plaintiff's fall.

Several doctors testified as experts concerning plaintiff's back problem. Plaintiff had first had back surgery in 1969, having a disk removed, and again had surgery in August 1973. The doctors were in agreement that plaintiff had suffered a back injury but disagreed as to the severity of the injury and plaintiff's degree of disability. Only one expert, Dr. Wright, was certain that plaintiff's injury resulted from a twisting fall caused by stepping on an uneven surface and could not have been caused by breaking up a fight, slipping on a factory floor, or slipping on icy pavement. The other doctors were less certain as to causation and testified, more or less, that any fall on the buttocks could have caused plaintiff's injuries. Dr. Shultz testified that he was skeptical of plaintiff's description of his pain symptoms because, in his opinion, low back pain cannot spread to the shoulder. Dr. Shultz testified that plaintiff led him to believe that the injury was due to a fall at work which caused plaintiff to land in a sitting position.

Dr. Garwacki, who first saw plaintiff on July 7, 1973, referred to the medical history which he prepared when he first examined the plaintiff. That history indicated that plaintiff told Dr. Garwacki that "he slipped while running and landed on his buttocks and right hip area. It was after this that, he states, he began to note pain." According to Dr. Garwacki, plaintiff never mentioned any cause other than slipping while running and had plaintiff mentioned slipping in a hole, being pertinent information, it would have been noted in plaintiff's history.

Dr. Ramey, who examined plaintiff on June 19, 1973, at the emergency room, testified pursuant to an evidence deposition as was the case with Dr. Garwacki. Dr. Ramey's testimony was based on a patient history of plaintiff prepared by either him or his nurse. That history indicated that plaintiff had "stated that he had low back pain which started after he broke up a fight three days previous."

Nurse Martha Edmonds testified that she prepared the patient history for plaintiff, when he was admitted to John Warner Hospital on June 19, 1973. That document, plaintiff's exhibit No. 2, was admitted into evidence. It contains no reference to plaintiff's slipping into a hole and refers only to "back-breaking of three days ago." Besides Ms. Edmonds, defendant's only other witness was Sheldon Nixon, defendant's executive director. He testified that he had had no complaints, either from tenants or his employees, pertaining to the drain at Webster Apartments prior to October 1973 when he first learned of the present lawsuit by virtue of being served with a summons and complaint.

The court denied defendant's motion for a directed verdict both at the close of plaintiff's case and at the close of defendant's case. The jury returned a $40,000 verdict for the plaintiff. In his post-trial motion, defendant requested, in the alternative, a directed verdict, judgment n.o.v., dismissal of the complaint, and a new trial. The court denied the motion in part and granted a new trial without stating the reasons. Plaintiff then filed a motion for leave to appeal, stating that it was error for the trial court to vacate the jury verdict and grant a new trial. This court granted the leave and then remanded the cause to the trial court with directions to make findings stating the reasons for granting the new trial. Those findings indicate that the trial court granted the new trial because it felt that the verdict was against the manifest weight of the evidence, even assuming the plaintiff's evidence to be true.

We note the desirability of, if not the requirement for, a definitive statement by the trial court noting the reasons for a new trial. It is much more expeditious for the trial court to indicate the rationale for its decision than to require this court, by the process of elimination, to determine what the trial court was thinking. We make these observations to commend the practice of specifying the grounds that constitute the basis for the trial court's judgment that a new trial should be granted.

In this case now, the trial court by its findings states that a new trial should be granted because the verdict was against the manifest weight of the evidence, even assuming plaintiff's evidence to be true. The defendant asserts, and we agree, that it can now urge error in granting a new trial and argue that there was an absence of constructive notice of the condition of the premises, and that such absence warranted the entry of a judgment notwithstanding the verdict.

■■ Under Supreme Court Rule 306(a)(2) (Ill. Rev. Stat. 1975, ch. 110A, par. 306(a)(2)), cross-appeals are unnecessary where an appellate court grants leave to appeal from an order granting a new trial. Defendant's post-trial motion raised the issue of whether a verdict should have been directed in its favor due to a lack of proof of notice. Accordingly, we consider that issue as well as the manifest weight of the evidence issue.

■■ In the supplemental findings, the trial court expressly found that "it is not clear from the evidence how long the hole had existed. Reasonable inferences could be drawn both ways." We agree. The issue of constructive notice was a jury question and that issue was resolved against the defendant.

Constructive notice exists in those instances where a defective condition has been shown to be present for such a length of time that the defendant knew, or by the exercise of reasonable care and diligence should have known, of the condition. (*Palermo v. City of Chicago Heights* (1971), 2 Ill. App. 3d 1004, 276 N.E.2d 470.) Thus, the resolution of the factual question as to the existence of constructive notice involves both the nature of the defect and the length of time that it existed.

■■ The trial court made its manifest weight finding with regard to the question of causation. As a general rule, the standard for reviewing the award of a new trial is quite different from a case where the court directs a verdict or grants a judgment notwithstanding the verdict:

> "The principle that trial courts are allowed a greater latitude in granting, rather than denying, a new trial has been emphasized many times. Courts of review are reluctant to review and reverse orders granting new trials and the power to do so is seldom exercised [citation]. Reversal of such new trial orders is not directed unless the abuse is obvious or the trial court acted under a misapprehension or clearly erroneous understanding of the law. The fundamental principle is that a trial judge is allowed broad discretion in granting of a new trial and that his action in so doing will only be reversed where it affirmatively appears that he has clearly and palpably abused his discretion." *Williamson v. Swank* (1971), 2 Ill. App. 3d 600, 603, 276 N.E.2d 737, 739.

However, courts are not free to reweigh the evidence and set aside a jury verdict merely because the jury could have drawn different

inferences or because judges feel that other results are more reasonable. *Dowler v. New York, Chicago & St. Louis R.R. Co.* (1955), 5 Ill. 2d 125, 125 N.E.2d 41; *Buer v. Hamilton* (1964), 48 Ill. App. 2d 171, 199 N.E.2d 256; *Stringer v. McHugh* (1975), 31 Ill. App. 3d 720, 334 N.E.2d 311.

Here, we are in disagreement with the trial court's statement in its finding that "the verdict was contrary to the manifest weight of the evidence and wholly unwarranted. This is so, even taking all of Plaintiff's evidence as true." The case is essentially one of credibility. Nobody saw plaintiff fall. He said he tripped over the exposed drain cover. His ex-wife and companion did not actually see what caused him to fall. However, Ms. Parker saw plaintiff lying on the ground and heard him say that he had tripped over the drain. Dr. Wright corroborated plaintiff's story to the extent that, in his opinion, plaintiff's injuries could only have been caused by a twisting fall due to stepping on an uneven surface, and not from the types of falls indicated in the conflicting medical histories. Of the other doctors to testify, only Dr. Shultz was skeptical of plaintiff's description of his pain symptoms. The other doctors simply felt that any type of fall on the buttocks could have caused plaintiff's injury. Thus, unlike in *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32, cited by defendant, plaintiff was not impeached by an impartial occurrence witness. The only matter rebutting plaintiff's version of the occurrence comes from the impeachment in his medical reports and his failure to mention prior back injuries in his deposition which he later admitted at trial. The jury heard the impeachment and plaintiff's explanation therefor. Still, they chose to believe plaintiff and awarded him a verdict. Assuming, as the trial court did, that the plaintiff's evidence was true, the jury could find for the plaintiff.

■■■ Given this evidence we cannot say that the jury's verdict was manifestly or palpably erroneous. Therefore, we find that the trial court invaded the constitutional province of the jury and thereby committed an abuse of discretion. As in *Foster v. VanGilder* (1965), 65 Ill. App. 2d 373, 378, 213 N.E.2d 421, 424, we find that the order granting a new trial "was the result of an erroneous substitution by the trial court of its reasonable inferences for those contrary inferences drawn by the jury, which also find reasonable support in the evidence. This, of course, was improper."

For the foregoing reasons, the judgment of the circuit court of De Witt County is reversed and remanded with directions to deny the motion for a new trial and to enter judgment on the verdict.

Reversed and remanded with directions.

MILLS, P. J., and TRAPP, J., concur.