JACK RYON *et al.*, Plaintiffs-Appellees, *v.* GERALD J. JAVIOR, Defendant-Appellant.

First District (2nd Division)   No. 77-1261

Opinion filed March 20, 1979.

Burton R. Abrams, of Chicago, for appellants.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Alvin G. Hubbard and John Skapars, of counsel), for appellees.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant appeals from an order of the circuit court of Cook County setting aside a jury verdict for defendant and granting plaintiffs a new trial. The court granted defendant leave to appeal pursuant to Supreme Court Rule 306. Ill. Rev. Stat. 1975, ch. 110A, par. 306.

The sole issue for review is whether the trial court abused its discretion in granting a new trial.

We affirm.

On July 14, 1972, at approximately 1 p.m., an automobile driven by defendant, Gerald J. Javior, struck the rear of an automobile driven by plaintiff, Jack Ryon. Plaintiffs, Charles Shedivy and Marsha Dial, were passengers in the Ryon automobile. The collision occurred on 143rd Street, which is a two-lane road with a gravel shoulder approximately six feet wide. The road inclines upward near Oak Park Avenue and then becomes level. The collision occurred on the level portion of the road. On the day of the accident, it had been raining intermittently, and the pavement was wet in some sections.

Defendant, Gerald J. Javior, called to testify under section 60 of the

Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60), testified that he was driving alone in his 1968 Cadillac. He drove south on Harlem Avenue and turned left onto 143rd Street. His brakes were in good condition, and he had no trouble stopping at the intersection of 143rd and Harlem. Javior was driving east on 143rd Street at a speed of 35 miles per hour when he observed Ryon's automobile approximately six to 10 car lengths ahead of his. Ryon's automobile began to slow down, and the distance between the two cars decreased. Javior did not observe any signals or brake lights on Ryon's automobile. Javior took his foot off the gas to decrease the speed of his automobile, but he continued to approach Ryon's automobile, which was moving slowly. When he was approximately six car lengths behind Ryon's automobile, Javior saw brake lights, and he immediately applied his brakes. At this time Ryon's automobile was moving slightly. When Javior applied his brakes, the brakes started screeching, and he continued moving forward. The brakes locked, and the front of Javior's automobile slid and hit the rear of Ryon's automobile. Javior testified that upon impact, Ryon's car was directly in front of his and was entirely in the east-bound moving lane. After the accident, all three plaintiffs got out of the automobile, spoke to Javior and then got into an ambulance. Javior observed only that Ryon's finger was bleeding.

Plaintiff Jack Ryon testified that he was driving his 1961 Cadillac and Shedivy and Ms. Dial were passengers. All three were sitting in the front seat. As they were driving east on 143rd Street, Ryon noticed a friend's motorcycle in the grass approximately six to eight feet off the side of the road. Ryon testified that he was driving approximately 35 to 40 miles per hour and was on the level portion of 143rd Street when he first saw the motorcycle. Ryon was not sure how far away from the motorcycle he was when he first saw it. In a deposition, Ryon stated that he was 30 feet away from the motorcycle when he first saw it. Ryon testified that he immediately took his foot off the gas and gradually slowed down, intending to go on the shoulder of the road. As he was slowing down, Ryon's automobile was hit in the rear by defendant's automobile and was thrown into a ditch off the side of the road. Ryon testified that he had the turn signal and his brake lights on, that he was moving no faster than five miles per hour, and that the front part of his automobile was off the road when he was hit. The impact occurred approximately 10 feet east of where the motorcycle was stopped. Ryon did not see Javior's automobile prior to impact and could not say for sure whether he looked in the rearview mirror prior to slowing down. Ryon did not hear a screech of tires just prior to impact.

Ryon testified that upon impact, part of the dashboard on his car was torn and flew into the back seat. Ryon's small finger on his right hand was cut and was bleeding. Ryon went to Palos Community Hospital in an

ambulance, and his finger was cleaned and bandaged and X rays were taken. Ryon then got his car out of the ditch and drove home. Approximately 4:30 p.m. on the same day Ryon went to Cook County Hospital where a doctor examined his hand. Ryon was admitted to the hospital, and surgery was performed on his hand. Ryon was discharged from the hospital the next day and remained under the care of Dr. Mirza at Cook County Hospital for approximately one year. Ryon testified that for approximately one year prior to the accident he was employed by Earl Scheib Auto Painting and earned about $2.50 per hour as a sander and painter. After the accident, he went back to work but had to quit because his hand hurt. He also worked for a short time at Clark Oil station and King Brothers gas station. Ryon testified that after the accident, he could not hold a job because he could not handle the machines. Ryon testified that when the weather gets cold, his hand freezes and he cannot work outside.

Plaintiff Charles Shedivy testified that he was riding in Ryon's automobile when the accident in question occurred. Shedivy first saw the motorcycle off the side of the road when Ryon's automobile was approximately 125 feet away from it. Shedivy testified that Ryon decreased the speed of his automobile gradually, put on the turn signal and began to pull off the road. Shedivy heard a screech of tires for one-half second immediately prior to the impact. Shedivy testified that upon impact his right limb, which is artificial, hit the dashboard and an aluminum belt, which secures the artificial limb, broke and ripped the dashboard. Part of the dashboard padding hit Ms. Dial in the face. His left limb also hit the dashboard, opening up a wound. Shedivy testified that he experienced "phantom pains," which are severe pains caused when his nerves send impulses to the missing limb. After the accident, Shedivy went to Palos Community Hospital in an ambulance. A doctor dressed the wound on his left limb, took X rays and gave him medication. Shedivy was released from the hospital the same day. Subsequently Shedivy was treated on two occasions by Dr. Pallily at Grant Rehabilitation Hospital and was given a prescription for sleeping pills. One week after the accident, Shedivy had the belt for the artificial limb repaired by Triple A Orthopedic at a cost of approximately $50. Shedivy replaced the artificial limb at a cost of $750.

Marsha Dial testified that she was a passenger in Ryon's car when the accident occurred. Ryon's car was moving slightly when it was hit, and she heard a screech of brakes just prior to impact. Upon impact, Dial was hit on the side of her neck by a piece of the dashboard. Dial went to Palos Community Hospital in an ambulance, and a doctor took X rays of her spine, neck and arm. Dial was given a neck brace which she wore for approximately 10 days. She was under the care of Dr. Hasbrouck for five

or six months after the accident, and she received heat treatments and medication. Dial testified that prior to the accident she was employed as a waitress earning $1.35 to $1.45 per hour plus tips of $9 to $10 a day. She worked eight hours a day, six days a week. After the accident, Dial was off work for two weeks and then worked part-time since it was hard for her to bend over. Ms. Dial testified that the bill for the ambulance was approximately $25, the bill for emergency treatment was $75 and Dr. Hasbrouck's bill was $150. She had not paid any of the bills. Ms. Dial testified that she continues to have pains in her back and neck, particularly when it is damp or cold.

Edward H. Bennett III testified that he is a statistician employed by the American Medical Association in Chicago to keep records of physicians and surgeons licensed and practicing in the area. The records indicate that in July 1972 Dr. Mirza was in training at Cook County Hospital with a specialty in general surgery and that at the time of trial Dr. Mirza resided in New York.

Edwin Brock testified that in July 1972 he was employed as a division manager for Earl Scheib Auto Painting Company and that the rate of pay for a sander and painter in July 1972 was $1.90 to $3 per hour. The average work schedule was eight hours a day, five days a week.

Dr. Robert C. Busch, a physician and surgeon associated with Mt. Sinai Hospital in Chicago, testified that he examined Ryon's right hand on February 17, 1977 (the day before trial), at the request of plaintiff's counsel. Dr. Busch observed an operative scarring which was thick and rough and a general weakness and stiffness of the right hand. Ryon's right hand measured eight inches, while the left hand measured 7½ inches. Dr. Busch observed a loss of 40 degrees of extension of the small finger. The other fingers on the right hand were of normal strength. Dr. Busch testified that an attempt could be made to repair the condition of Ryon's hand by a tendon transplant; however, he would not recommend any surgery because the chances of success were minimal. Dr. Busch concluded that Ryon's injury was a permanent condition. Dr. Busch testified that a large portion of his work, approximately 60 percent, consists of examining patients sent to him by attorneys for the purpose of evaluating injuries. Ryon was the first patient sent to him by plaintiffs' counsel; however, more than 25 patients were referred to him by the partner of plaintiffs' counsel. Dr. Busch had not performed any surgery for a period of one year prior to trial.

Dr. Cecil F. Hasbrouck testified that on July 14, 1972, he was associated with Palos Community Hospital and examined Marsha Dial in the emergency room. His records indicate that Ms. Dial was given a physical examination, that X rays were taken and a cervical support was

placed around her neck. Ms. Dial was discharged the same day but remained under Dr. Hasbrouck's care until December 1972. Dr. Hasbrouck examined Ms. Dial on six occasions from July 25, 1972, to December 19, 1972, and she complained of pains in her neck and upper back. Dr. Hasbrouck applied traction, gave her cortisone shots and pain pills. Dr. Hasbrouck testified that a fair charge for the X rays was $75 and that the charge for his services was $150.

Vincent O'Grady testified that he operates a service station in Oak Forest and he employed Ryon for approximately one month, from November 15, 1976, to December 15, 1976. Ryon pumped gas and sold oil and he had to use his hands to perform his duties. O'Grady testified that Ryon never complained of an inability to perform his duties because of his hand. O'Grady was satisfied with Ryon's physical ability to work.

The jury returned a verdict in favor of defendant, Javior, and against all three plaintiffs. The jury answered affirmatively to a special interrogatory regarding contributory negligence on the part of Ryon. The trial court set aside the jury verdict and granted plaintiffs' motion for new trial stating that the jury verdict was contrary to the law and the evidence.

It is established that the granting of a motion for new trial is discretionary with the trial court and that its ruling will not be reversed unless a clear abuse of discretion is shown on the record. (*Spankroy v. Alesky* (1st Dist. 1977), 45 Ill. App. 3d 432, 436, 359 N.E.2d 1078.) A trial court is allowed broad discretion in granting a new trial. However, the discretion is not unlimited and it must be exercised reasonably. (*Parker v. De Witt County Housing Authority* (4th Dist. 1978), 57 Ill. App. 3d 973, 373 N.E.2d 680; *Johnson v. Chicago Transit Authority* (1st Dist. 1975), 28 Ill. App. 3d 945, 329 N.E.2d 395, *appeal denied* (1975), 60 Ill. 2d 597.) Courts are not free to reweigh the evidence and set aside a jury verdict merely because the jury could have drawn different inferences or because judges feel that other results are more reasonable. 57 Ill. App. 3d 973, 977-78; *Foster v. VanGilder* (3d Dist. 1966), 65 Ill. App. 2d 373, 377, 213 N.E.2d 421.

The standard to be applied by the trial court in reviewing a jury determination on a motion for new trial is the preponderance of the evidence. (*Spankroy.*) The court in *Spankroy* set forth a definition of "preponderance of the evidence" stating:

"Preponderance of the evidence, as defined in *Moss-American, Inc. v. Fair Employment Practices Com.* (5th Dist. 1974), 22 Ill. App. 3d 248, 259, 317 N.E.2d 343, means:

'[T]he greater weight of the evidence, not necessarily in numbers of witnesses, but in merit and worth that which has more evidence for it than against it is said to be proven by a

preponderance. Preponderance of the evidence is sufficient if it inclines an impartial and reasonable mind to one side rather than the other.' " (45 Ill. App. 3d 432, 436.)

If it appears that the verdict was the result of some bias, prejudice, or misconception of the evidence on the part of the jury, the trial court should order a new trial. (*Spankroy.*) The standard to be used by a reviewing court in determining the correctness of a trial court's ruling on a motion for new trial is whether the trial court abused its discretion or whether its ruling was against the manifest weight of the evidence. *Martinet v. International Harvester Co.* (1st Dist. 1977), 53 Ill. App. 3d 213, 221-22, 368 N.E.2d 496, *appeal denied* (1978), 67 Ill. 2d 592.

Defendant contends that the jury verdict was supported by the evidence and the trial court abused its discretion by substituting its judgment for that of the jury. Defendant contends that the evidence showed that Ryon was contributorily negligent by failing to make a proper lookout to the rear before slowing down[1] and that Shedivy and Dial failed to prove that they suffered any injuries proximately caused by the accident. Plaintiffs contend that the trial court did not abuse its discretion in granting a new trial because the evidence showed defendant was negligent in failing to maintain a proper lookout for traffic ahead of him. Plaintiffs also contend that there was an error in the jury instructions and that defendant's counsel made prejudicial statements in his closing argument.

■■■ A driver of an automobile must use every reasonable precaution to avoid a collision with the automobile ahead. (*Leonard v. Pacific Intermountain Express Co.* (1st Dist. 1976), 37 Ill. App. 3d 995, 347 N.E.2d 359, *appeal denied* (1976), 63 Ill. 2d 557; *Apato v. Be Mac Transport Co.* (1st Dist. 1972), 7 Ill. App. 3d 1099, 288 N.E.2d 683.) A driver approaching from the rear has the duty to keep a safe lookout and must take into account the prospect of having to stop his vehicle suddenly. (*Apato; Ferguson v. Zeman* (1st Dist. 1969), 109 Ill. App. 2d 417, 248 N.E.2d 731; *Barnash v. Rubovits* (1st Dist. 1964), 46 Ill. App. 2d 409, 197 N.E.2d 134.) A driver who does not maintain a proper lookout for traffic ahead is negligent. (*Oothoudt v. Woodard* (2d Dist. 1971), 132 Ill. App. 2d 203, 207, 269 N.E.2d 511; *Cook v. Boothman* (4th Dist. 1960), 24 Ill. App. 2d 552, 558, 165 N.E.2d 544.) However, it does not follow that every person whose automobile is struck from the rear is free from contributory negligence and is entitled to recover as a matter of law. (132 Ill. App. 2d 203, 207; 24 Ill. App. 2d 552, 558.) It has been held that a

---

[1] In his brief defendant continually refers to the fact that Ryon "stopped" his automobile on the highway. However, the testimony at trial was that Ryon was not stopped at the time of the collision, but was moving slowly. It might be noted that the trial court refused to give a jury instruction tendered by defendant, which stated that it was a violation of the motor vehicle code to stop an automobile on a highway.

driver intending to stop or suddenly slow down his vehicle must use due care for the safety of vehicles following so closely behind him that they may be imperiled by a sudden stop. *Leonard v. Pacific Intermountain Express Co.* (1st Dist. 1976), 37 Ill. App. 3d 995, 999; *Mernick v. Chiodini* (4th Dist. 1956), 12 Ill. App. 2d 249, 255, 139 N.E.2d 784.

■ The evidence showed that Ryon did not make a sudden stop but rather slowed down his automobile gradually. Although there is conflicting evidence as to whether Ryon used a turn signal to show his intent to slow down and to pull off the road, Javior had knowledge without the turn signal that Ryon was slowing down. Javior admitted that he was at least 10 car-lengths behind Ryon's automobile when he observed that Ryon was decreasing his speed. Although Javior decreased the speed of his automobile, he proceeded forward, continually decreasing the interval between the two cars until the collision occurred. It is true, as defendant contends, that a driver who stops suddenly without warning may be negligent and liable to the driver of an automobile behind him. (*Williams v. Matlin* (1st Dist. 1946), 328 Ill. App. 645, 66 N.E.2d 719.) However, here the evidence shows that Javior failed to take every reasonable precaution to avoid a collision. Although Javior had knowledge that the automobile ahead of his. was slowing down and practically stopped and that the pavement was wet, Javior failed to take into account the prospect of having to stop to avoid a collision. A review of the record shows that the greater weight of the evidence supports plaintiffs' contentions that Javior was negligent.[2] Thus, the trial court was not substituting its judgment for that of the jury and did not abuse its discretion in granting a new trial.

Plaintiffs contend that the jury was erroneously instructed that they could decide the claims of all three plaintiffs by the acts of Ryon. However, the record shows that the jury was properly instructed with the following instruction tendered by plaintiffs' counsel:

> "If you find that there was negligence on the part of the driver of the vehicle in which the plaintiffs, Charles Shedivy and Marsha Dial, were riding, then the driver's negligence cannot be charged to said plaintiffs. The care required of the plaintiffs Charles Shedivy and Marsha Dial, in this case is that which a reasonably careful person riding as a guest would use under similar circumstances."

■ Plaintiffs also contend that counsel for defendant in closing argument

---

[2] There is evidence which supports the jury's finding that Ryon was contributorily negligent (*i.e.*, no signal to warn cars behind that he was stopping). However, even assuming Ryon was contributorily negligent, it would be immaterial to the rights of Shedivy and Dial to recover, unless Ryon's negligence could be found to be the sole cause of the collision. The contributory negligence of a driver is not imputed to his passengers. *Leming v. Oltman* (4th Dist. 1967), 87 Ill. App. 2d 97, 231 N.E.2d 621.

improperly referred to Dr. Busch as a "professional testifier." However, there was no objection to the statement, and the contention is waived for purposes of appeal. Also, since there was evidence that 60 percent of Dr. Busch's clients were referred to him by attorneys, the counsel's statement was not so prejudicial as to deny plaintiffs a fair trial. (See *Department of Public Works & Buildings v. Diel* (5th Dist. 1967), 89 Ill. App. 2d 130, 232 N.E.2d 133.) Plaintiffs cite other allegedly prejudicial statements made by defendant's counsel; however, in each instance the trial court instructed the jury to disregard the statements.

Defendant contends that Shedivy and Dial failed to prove they suffered damage as a result of the collision. However, the evidence shows that each of the plaintiffs was injured as a result of the collision and received medical treatment immediately after the accident.

Based on the foregoing we affirm the order of the circuit court of Cook County granting plaintiffs a new trial.

Affirmed.

DOWNING and HARTMAN, JJ., concur.