JUDITH A. SITOWSKI, Plaintiff-Appellee, v. BUCK BROTHERS, INC., *et al.*, Defendants-Appellants.

First District (1st Division)   No. 85—1025

Opinion filed August 25, 1986.

Richard J. Phelan and Suzanne M. Metzel, both of Phelan, Pope & John, Ltd., of Chicago, for appellants.

James T. Demos and Linda A. Leonetti, both of James, Thomas, Demos & Associates, Ltd., of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This appeal arises out of a personal injury action brought by plaintiff, Judith Sitowski, to recover damages sustained in a three-vehicle collision which occurred in the middle of the afternoon of September 17, 1982. An automobile driven by codefendant, John Carr, struck plaintiff's subcompact car from the rear and forced her into the oncoming lane of traffic where she was struck by a truck driven by defendant Brian Young, an employee of defendant Buck Brothers, Inc. The accident occurred at the "T" intersection where Oakleaf Drive intersects Route 47, a two-lane highway, in Elburn. The jury found in favor of plaintiff and against all defendants. Buck Brothers and Brian Young appeal from the trial court's denial of their motions for a directed verdict, judgment notwithstanding the verdict and a new trial. We affirm.

At trial, plaintiff testified that she resided on Oakleaf Drive and was familiar with the intersection. On the afternoon of the accident, she was driving a Pontiac Sunbird north on Route 47. She intended

to make a left turn onto Oakleaf Drive. Seeing two southbound trucks approaching, she came to a complete stop at the intersection. At that time, the first truck was approximately 100 feet away from her and the second truck was about a block away. Her front wheels were turned slightly to the left and her foot was on the brake. Within one or two seconds after the first truck passed her, she was struck from the rear and her car was pushed a few feet into the southbound lane of traffic. She stated that she was "absolutely not injured" at that point. The passenger side of her vehicle was facing the oncoming truck. She tried to accelerate through the intersection but her engine stalled. The second truck was about 250 to 300 feet away and was "going very fast." She estimated its speed at "65 miles an hour or faster." Her car was in the southbound lane for four to five seconds. During that time, the truck made no attempt to avoid hitting her. As a result of the accident, she suffered serious injuries.

Codefendant Carr testified in an evidence deposition that he was driving a Buick Century with his wife on the day of the accident. They were traveling north on Route 47. It was drizzling and the pavement was wet. His speed was approximately 40 to 45 miles per hour. He did not see plaintiff's vehicle until just before he hit it. It was completely stopped. He made no attempt to brake or swerve to avoid the collision. The left front of his vehicle struck the rear of plaintiff's car and he went off the road to his right. He did not see the second collision.

Defendant Young testified that, on the day of the accident, he was driving a grain truck in the middle of a caravan of three Buck Brothers trucks. Don Strictland was in front and James Hulke was behind Young. From his truck seat, he could see over the tops of cars coming toward him. He was familiar with the intersection. His speed was approximately 40 miles per hour immediately prior to the accident. He first saw plaintiff when she was approximately 150 to 175 feet in front of him. He did not see her stop at the intersection. He was aware that Carr was behind her but did not know how far behind. Young did not see Carr's vehicle catching up with plaintiff's car or their rear-end collision. As he testified, he "did not see why" plaintiff crossed over into his lane. Plaintiff crossed into his lane approximately 10 feet in front of his truck and impact occurred within one-third of a second. During that time, Young braked, felt his brakes were solid, turned his steering wheel to the right and leaned over on the seat to brace himself. He did not see the collision between his truck and plaintiff. Afterward, his truck went off the road

to the right.

James Hulke testified on behalf of defendants. At the time of the accident he was employed as a truck driver by Buck Brothers and also worked part-time as an auxiliary deputy of the Kane County sheriff's department. Hulke stated that he was driving a large tractor-trailer truck which was the third in a three-truck caravan going south on Route 47. He was approximately 275 to 300 feet behind Young at the time of the first collision and he saw both collisions. The time between the two collisions was one-third of a second. After the accident, he identified the driver of the Carr vehicle to the investigating police officer. However, he was not asked whether he witnessed the collision and he did not volunteer the information.

Stafford Meek testified on behalf of defendants. Shortly before the accident, he was traveling south on Route 47 behind Young's truck. Traffic was proceeding at approximately 40 to 45 miles per hour. There were two or three cars and no trucks between himself and Young's truck. Meek stated that there was a semi-truck in front of Young's truck but no other trucks in sight. Meek did not witness the accident because he lost sight of Young's truck when it went over the crest of a hill. Meek also testified that a po¹ce officer later identified as Officer Hogle asked him if he witnessed the accident and he said no.

Another witness for the defense, Richard Dobbs, testified that he was traveling in the northbound lane of traffic on Route 47. He noticed Carr because Carr had passed him a mile before the accident. It had not started to rain and the pavement was dry. He did not see the rear-end collision between Carr and plaintiff because he lost sight of Carr about two-thirds of a mile from the scene of the accident. He was approximately 600 to 900 feet behind Carr when he saw a puff of dust and parts flying. He saw plaintiff's vehicle cross the center line directly in the path of Young. The time between the two collisions was instantaneous. At first, Dobbs testified that plaintiff's car was hit in the front end by Young and then came to rest in the middle of Route 47. After viewing photographic exhibits of the accident, however, he admitted that he was wrong and that plaintiff was really hit directly on the passenger side and ended up entirely off the highway. After the accident. Dobbs said he went to the investigating police officer to identify the driver of the Carr vehicle. He told the officer that he witnessed the accident, but he was not asked for details.

Kevin Hogle, a police officer with the Kane County sheriff's department, testified on behalf of plaintiff that he investigated the accident immediately after it occurred and prepared a report which he re-

referred to during his testimony. He stated that he had an independent recollection of the accident. It had been raining that day and the pavement was slick. Officer Hogle remembered speaking with Hulke at the scene. Hulke told him that he did not witness the accident because he was driving a truck in front of Young's truck and had already passed the scene of the accident when it occurred. Hulke said he later looked behind him and could not find Young so he turned his truck around and returned to the scene. There, Hulke learned that Young had been involved in an accident. Because Hulke had told him that he did not witness the accident, Officer Hogle did not include Hulke's statement in his report.

Officer Hogle had no independent recollection of speaking with Dobbs and Meek at the scene. However, Hogle stated that he would have asked them whether they witnessed the accident and would have taken their statement in his police report if they had said yes. Because the only notation in his report concerning Dobbs and Meek was that they identified the driver of the Carr vehicle. Hogle stated that both Dobbs and Meek denied witnessing the accident.

Deputy Patricia Pall, another police officer with the Kane County sheriff's department, testified that she took Young's statement at a hospital after the accident and he told her that he saw Carr's vehicle strike plaintiff's vehicle from behind.

Prior to trial, codefendant Carr made a motion *in limine* to exclude evidence that Carr passed Dobbs in a no-passing zone prior to the accident and then switched places with his wife after the accident. The motion was granted without objection. After the testimony of Hogle and Dobbs, defendants Buck Brothers and Young sought to modify the order *in limine*. The trial court refused. At the close of plaintiff's case, defendants made a motion for a directed verdict against their codefendant Carr, which was denied. At the close of all the evidence, defendants made another motion for a directed verdict against plaintiff, which was also denied. At the close of all the evidence, defendants made another motion for a directed verdict against plaintiff, which was also denied. The jury found in favor of plaintiff and against all defendants. Defendants' motion for a judgment notwithstanding the verdict and for a new trial were denied by the trial court. Buck Brothers and Brian Young now appeal.

They contend: (1) the trial court's failure to grant a directed verdict or a judgment notwithstanding the verdict was an abuse of discretion; (2) the trial court improperly denied their motion for a new trial because the verdict was against the manifest weight of the evidence; (3) the court's exclusion of evidence in its order *in limine* pre-

cluded defendants from demonstrating the error in Officer Hogle's testimony; and (4) they should be granted a new trial because the trial court's failure to direct a verdict against codefendant Carr resulted in undue prejudice to defendants.

Initially defendants contend that the trial court should have directed a verdict in their favor or have entered judgment for them notwithstanding the verdict under the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. In addition, they also argue that the evidence warranting a directed verdict in *Pedrick* is sufficiently similar to the evidence in the case at bar that the trial court should have directed the verdict in this case as well. We do not agree.

In *Pedrick*, the supreme court established a single standard for directing verdicts and entering judgments *n.o.v.*: "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) The presence of some evidence favoring the opponent will not preclude a directed verdict or a judgment *n.o.v.* where it is overwhelmingly contradicted by the remaining evidence. (37 Ill. 2d 494, 511, 229 N.E.2d 504; *Perec v. Little* (1969), 106 Ill. App. 2d 308, 312-13, 245 N.E.2d 306, *appeal denied* (1969), 40 Ill. 2d 581.) However, "[w]here the evidence demonstrates a substantial factual dispute, or where the assessment of the credibility of witnesses or determination regarding conflicting evidence may be decisive to the outcome, it is error to direct a verdict or enter judgment notwithstanding the verdict." *Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 253, 451 N.E.2d 1313.

*Pedrick* involved the question of whether red flashing warning lights were operating at a railroad crossing where the Pedrick's automobile was struck by a train operated by the Peoria & Eastern Railroad Company. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 496, 299 N.E.2d 504.) Testimony by the Pedricks and their passenger, who was also suing the railroad, that the warning lights were not operating was equivocal and ambiguous. Testimony by railroad employees was corroborated by two disinterested witnesses who testified unequivocally that the flashing lights were working at the time of the accident. (37 Ill. 2d 494, 511, 299 N.E.2d 504.) The jury found in favor of the Pedricks. However, because the "dubious probative value" of the testimony presented by plaintiffs was overwhelm-

ingly contradicted by the unequivocal testimony by disinterested witnesses and the corroborative testimony of the railroad employees, the court in *Pedrick* held that the railroad's motion for a directed verdict should have been granted. 37 Ill. 2d 494, 511-12, 299 N.E.2d 504.

In contrast to *Pedrick*, the evidence in the case at bar is much less one sided. Unlike the equivocal testimony presented by the plaintiffs in *Pedrick*, Ms. Sitowski's testimony was unequivocal and unambiguous. Although defendants argue that plaintiff's fright during the incident rendered her an unreliable witness, she denied being in a state of panic. The trial court found her to be a credible witness, even though it discounted her testimony as to the speed of the oncoming truck.

Defendants also assert that plaintiff's testimony is "inherently inconsistent" with the physical evidence in this case because a rear-end collision between plaintiff's subcompact car and Carr's full-sized Buick Century driven at 40 miles per hour could not have failed to injure plaintiff and forced her car only a few feet into the oncoming lane of traffic. However, defendants did not present any expert testimony to show that the accident could not have occurred as plaintiff said it had. Viewing the photographic exhibits in a light most favorable to plaintiff, we cannot say that the physical evidence necessarily conflicts with plaintiff's testimony.

Although Young's testimony contradicted plaintiff's version of the accident, his admission that he did not see the first collision or the events leading up to it, supports plaintiff's claim that he failed to keep a proper lookout and is inconsistent with his prior statements to police officer Pall. Although defendants assert that James Hulke was an independent witness because he was not connected with any of the parties when he testified, the probative value of his testimony was lessened by the fact that he was an employee of Buck Brothers and a co-worker of Young at the time of the accident. Moreover, his statement at trial that he witnessed the accident because he was driving behind Young's truck was contradicted by Meek and Officer Hogle. Defendants' only other occurrence witness was Richard Dobbs and his statement that he witnessed the second collision and reported that fact to police was contradicted by Officer Hogle.

■ When all the evidence is viewed in a light most favorable to plaintiff, we cannot say that the evidence so overwhelmingly favored defendant that no verdict in favor of plaintiff could stand. Rather, we believe that the evidence presented a substantial factual dispute so that the jury's assessment of the credibility of witnesses and its determination regarding conflicting evidence was decisive to the out-

come of this case. Therefore, we hold that it was not error for the trial court to have denied defendants' motion for a directed verdict or for a judgment notwithstanding the verdict.

Defendants also contend that the trial court erred in refusing to grant their motion for a new trial. It is established that the granting of such a motion is discretionary with the trial court and its ruling will not be reversed unless a clear abuse of discretion is shown on the record. (*Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 436, 359 N.E.2d 1078.) Although defendants intimate that the trial court failed to use the proper standard in ruling on their motion, we note that the court specifically stated that it used the preponderance of the evidence standard, which is the appropriate standard. 45 Ill. App. 3d 432, 436, 359 N.E.2d 1078.

As a court of review, the standard we must use in determining the correctness of the trial court's ruling on the motion for a new trial is whether its ruling was against the manifest weight of the evidence. (*Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 439, 359 N.E.2d 1078.) "Manifest weight means the clearly evident, plain and indisputable weight of the evidence." (*Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 436, 359 N.E.2d 1078; quoting *Gettemy v. Grgula* (1975), 25 Ill. App. 3d 625, 628, 323 N.E.2d 628.) The weight of the evidence is determined, not necessarily in numbers of witnesses, but in merit or worth. (*Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 436, 359 N.E.2d 1078.) While the standard of review governing a motion for a new trial is less stringent than the "more nearly conclusive evidentiary situation" governing directed verdicts and judgments *n.o.v. (Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32; quoting *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 509-10, 299 N.E.2d 504), the motion for new trial does not present this court with an opportunity to substitute its judgment for that of the jury (see *Ryon v. Javior* (1979), 69 Ill. App. 3d 946, 387 N.E.2d 936, *appeal denied* (1979), 79 Ill. 2d 618). Rather, a court of review must make a legal determination as to whether there is sufficient evidence to support the trial court's ruling.

Here, plaintiff's testimony was the primary evidence that the accident occurred as she said it had. Her testimony was unequivocal. The trial court found her to be a credible witness. Her testimony was contradicted by the testimony of Young, Hulke and Dobbs. However, Young's testimony was ambiguous and inconsistent with prior statements to the police. Hulke was an employee and co-worker of defendants at the time of the accident. He was not a credible witness in the eyes of the trial court. Crucial aspects of his testimony were

contradicted by Meek and Officer Hogle. Dobbs was an independent witness, but his recollection of the accident was admittedly inaccurate in several respects and his veracity was brought into question by Officer Hogle's testimony. When the evidence is considered in terms of merit or worth rather than in terms of numbers of witnesses, we cannot say that the "clearly evident, plain indisputable weight of the evidence" so clearly favored defendants that the trial court's denial of their motion for a new trial was against the manifest weight of the evidence.

We also find no merit in defendants' argument that the trial court's refusal to modify its order *in limine* prejudicially precluded them from attacking Hogle's conclusion that Dobbs initially denied witnessing the accident. In the order *in limine*, evidence that John Carr switched places with his wife after the accident was excluded because Carr admitted prior to trial that he was driving when his car struck plaintiff's. Defendants sought a modification of the order in order to show that Officer Hogle would not have asked Dobbs whether he witnessed the accident because Hogle was primarily concerned with identifying the driver of the Carr vehicle.

■ However, defendants' argument is based largely on conjecture about Officer Hogle's state of mind during his investigation. Defendants never questioned Hogle at trial about his concerns during his investigation. Nor did they make an offer of proof showing how they were prevented from exploring this area by the order *in limine*. And even if we accept defendants' hypothesis that Officer Hogle was preoccupied with identifying the driver of the Carr vehicle, it does not necessarily follow that he would have failed to seek out witnesses of the accident. Although he had no independent recollection of talking with Dobbs and Meek, Officer Hogle testified that he customarily would have noted an affirmative response on his police report. Hogle's testimony on this point was corroborated by Meek. Because the excluded evidence was of minimal probative value in attacking Hogle's testimony and was obviously prejudicial to Carr, the trial court properly refused to modify its order *in limine*.

Finally, defendants seeks a new trial on the grounds that the trial court failed to direct a verdict against codefendant Carr. They contend that continued litigation against Carr on the issue of liability rendered further proceedings a sham because Carr had no valid defense against plaintiff's claim and asserted specious defenses designed to implicate them. While a court may direct a verdict on its own motion when the evidence warrants (see, *e.g., Frisch Contracting Service Corp. v. Northern Illinois Gas Co.* (1981), 93 Ill. App. 3d

799, 417 N.E.2d 1070), the trial court here obviously felt that the evidence did not warrant directing a verdict against Carr *sua sponte* even though the court indicated that it would have granted such a motion had plaintiff made one. The fact that plaintiff refused to seek a directed verdict against Carr did not taint the proceedings in the absence of evidence that plaintiff and Carr entered into an agreement which undermined the integrity of the adversary nature of the judicial process. Counsels for plaintiff and for Carr, who were officers of the court, denied the existence of such an agreement and the totality of the circumstances does not lead to an inference that one existed. See *McCann v. Lisle-Woodridge Fire Protection District* (1983), 115 Ill. App. 3d 702, 450 N.E.2d 1311.

■■ We do not believe that defendants were unduly prejudiced by the trial court's refusal to direct a verdict against Carr *sua sponte*. Contrary to defendants' assertions, the case against Carr was not indefensible. Even though Carr could not strongly contest the issue of his negligence, his defense rested on whether his negligence proximately caused plaintiff's injuries. He was entitled to highlight testimony by plaintiff that supported his position even though it implicated defendants. Moreover, defendants engaged in the same conduct now complained of. Their defense that Young could not possibly have avoided plaintiff necessarily implicated Carr since it was stipulated that plaintiff was not contributorily negligent.

Therefore, we cannot say that the trial court erred in failing to direct a verdict against Carr on its own motion or that defendants were unduly prejudiced thereby.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.