(No. 86-CC-2972–)

DAVID H. KATZENBERGER, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 8, 1991.*

KASSLY, BONE, BECKER, DIX, REAGAN & YOUNG, P.C. (JOHN M. ENGLISH, of counsel), for Claimant.

ROLAND W. BURRIS, Attorney General (PHILLIP McQUILLAN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

Montana, C.J.

This is a claim for personal injuries pursuant to section 8(d) of the Court of Claims Act. (Ill. Rev. Stat. 1989, ch. 27, par. 439.8(d)). Claimant David Katzenberger alleges that he was injured as a result of the negligence of one of the State's agents when, on March 14, 1985, he was forced to "lay his motorcycle down" after a Department of Conservation truck unexpectedly entered his lane in order to make an improper U-turn.

At approximately 1:25 p.m. on March 14, 1985, Mr. Katzenberger was driving his motorcycle westward on U.S. 40. At the same time, Norman Williams, an employee of the Respondent's Department of Conservation, was operating (within the scope of his employment duties) a Department of Conservation truck on U.S. 40 approximately one-half mile west of Sand Prairie Lane.

It is Mr. Katzenberger's claim that, just prior to the accident, he was in the passing or inside lane, and that Mr. Williams was in the slower or outside lane. U.S. 40 at the point in question is a four-lane highway with two lanes going in each direction, with the east and westbound traffic being separated by a central divider or curb. Claimant testified that he was traveling approximately 45 miles per hour and that, as he came within 15 to 20 feet behind the Conservation truck, Respondent's agent stuck his hand out the window, waved it up and down, and proceeded to cross over into Claimant's lane. Claimant testified he did not notice any

electrical turn signal. Upon further inquiry, Claimant testified that the Conservation truck, at that time, was travelling only 20 to 25 miles per hour and slowing. According to the Claimant, when the truck changed lanes, he was forced to move as close to the center curb as possible and, ultimately, to lay the motorcycle down in order to avoid hitting Mr. Williams.

It is undisputed that Claimant never struck the Conservation truck (the motorcycle and Claimant slid to a stop approximately 12 to 15 feet behind the truck). Other evidence was produced showing that Respondent's agent pled guilty, in Madison County Circuit Court, to the charge of attempting to execute an improper U-turn.

Claimant also produced a Mr. Hooper who testified that he witnessed the accident in question. Although Mr. Hooper's testimony, at times, was a little confusing, after reading the entire transcript and taking his testimony as a whole, it is clear that Mr. Hooper agreed with Mr. Katzenberger as to what transpired on the day in question. It was Mr. Hooper's impression that Claimant was attempting to pass the Conservation truck. Mr. Hooper testified that when Claimant approached the Conservation truck, Mr. Williams went from the outside lane over into the passing lane and "pushed claimant up on the median."

The Respondent, on the other hand, would have this Court believe that its agent was stopped in the left hand or passing lane for approximately a minute and a half. Mr. Williams testified that he had the electrical turn signal on, his foot on the brake, his hand out the window ("frantically waving it up and down"), waiting for oncoming traffic to clear so that he could execute his U-turn. Mr. Williams testified that he saw Claimant initially

attempt to maneuver around the truck; however, when the attempt failed, Claimant laid the motorcycle down with a resultant skid of approximately 30 feet.

It is undisputed that the weather was clear and that the road was dry, straight and level.

Respondent first argues that Claimant has failed to prove negligence by a preponderance of the evidence. Additionally, Respondent argues that, even if it was negligent, such negligence was not the proximate cause of Claimant's accident.

The Court disagrees.

Illinois Revised Statutes, chapter 95½, par. 11—802(a) requires "that the driver of any vehicle shall not turn such vehicle so as to proceed in the opposite direction unless such movements can be made in safety without interfering with other traffic." Further, Illinois Revised Statutes, chapter 95½, par. 11—709(a) indicates that when driving on roadways laned for traffic, "a vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." There is also an Illinois statute which defines the proper method of giving hand and arm signals. In Ill. Rev. Stat., ch. 95½, par. 11—806, it states: "All signals herein required to be given by hand and arm shall be given from the left side of the vehicle in the following manner, and such signals shall indicate as follows: (1) left turn—hand and arm extended horizontally; (2) right turn—hand and arm extended upward; (3) stop or decrease of speed—hand and arm extended downward." Additionally, this Court of Claims has stated: "Operators of State vehicles are charged with the same duty of care as other drivers upon

the highway, and the State is liable for damages proximately caused by their negligent acts." (*Marquis v. State* (1985), 37 Ill. Ct. Cl. 222.) Lastly, the Appellate Court for the Second District noted: "A violation of a statute, such as a speed limit, that is designed to protect human life or property, is *prima facie* evidence of negligence." *Old Second National Bank of Aurora v. Baumann* (1980), 86 Ill. App. 3d 547, 408 N.E.2d 224.

In the case at bar, not only did Claimant testify as to negligent acts by Respondent, but so did an independent witness (Mr. Hooper), and Respondent's own agent (Mr. Williams). There is uncontradicted testimony that Respondent's agent gave an improper hand signal (*i.e.*, he waved his hand up and down instead of as required by par. 11—806). There is testimony (albeit conflicting) that Respondent's agent failed to use his directional turn signal. There is evidence that Respondent's agent improperly changed into, or encroached upon, Claimant's lane. There is testimony that Respondent's agent may have violated the common law maxim that "a driver intending to stop or suddenly slow down his vehicle must use due care for the safety of vehicles following so closely behind him lest they may be imperiled by a sudden stop." (See *Ryon v. Javior* (1979), 69 Ill. App. 3d 946, 387 N.E.2d 936, 942.) Lastly, the mere facts that the Respondent's agent pled guilty to the charge of attempting to make an improper U-turn, and the accident itself, tend to show negligence. Taking all of the above into account, it is felt that Claimant has met his burden with respect to showing negligence and that Respondent's negligence was the proximate cause of Claimant's injuries.

Notwithstanding the foregoing, it is felt that Claimant was also negligent. "A driver of an automobile must use every reasonable precaution to avoid a collision with

the automobile ahead." (*Ryon* at 952.) "A driver approaching from the rear has a duty to keep a safe lookout and must take into account the prospect of having to stop his vehicle suddenly." Id.; *Economy Fire & Casualty Co. v. State* (1984), 36 Ill. Ct. Cl. 214, 215. "A driver who does not maintain a proper lookout for traffic ahead is negligent." (*Ryon* at 952.) "A driver's duty is to see that which he clearly should see." *Marquis v. State* (1985), 37 Ill. Ct. Cl. 221, 223.

In the case at bar, there is uncontradicted testimony that the road was clear, dry, straight and level. Claimant had a duty to observe, or take note of the Conservation truck. Additionally, Claimant should have foreseen that a Conservation truck may make unusual turns and stops in the performance of its duties. (See *Marquis* at 223.) Lastly, the fact that motorcycles are traditionally more difficult to observe (as compared to cars, etc.), should have given Claimant the impetus to exercise a greater degree of care for his safety. As Illinois has adopted the theory or doctrine of comparative negligence (see *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886), Claimant is found to have been 35% negligent and his award should be reduced accordingly.

As a result of "laying his motorcycle down," Claimant suffered a dislocated shoulder and lacerations and abrasions to his knees and elbows. The above-mentioned dislocation also caused Claimant to suffer a more permanent injury in that he has now lost some 55 degrees of flexion in his left shoulder. There is also evidence that Claimant might have suffered a possible rotator cuff tear (and, although disputed), an aggravation of a pre-existing condition known as osteoarthritis.

As far as the osteoarthritis condition is concerned, Respondent draws attention to the fact that Claimant's

counsel, during the medical expert's evidence deposition, failed to inquire whether the motorcycle accident aggravated said condition based upon a "reasonable degree of medical and surgical certainty."

When addressing the above issue, it is important to note that the parties stipulated at the beginning of the doctor's deposition that "all objections, *except objections to the form of the question asked,* * * * are hereby reserved * * *." As Respondent's objection goes to the form of the question asked, the objection should have been raised during the deposition. Since Respondent failed to object at the deposition with respect to this issue, it will be treated as having been waived.

Respondent next argues that several of the itemized damages listed in Claimant's brief are either too speculative or excessive. As shown below in the award given, it is felt that Respondent's arguments have at least some merit.

Lastly, Respondent argues that Claimant's claim for lost wages should be denied. In its brief, Respondent cites *Turner v. Chicago Transit Authority* (1984), 122 Ill. App. 3d 419, 461 N.E.2d 551, as supporting the proposition that a plaintiff, unemployed at the time of an accident, cannot recover lost wages unless there is evidence establishing with reasonable certainty that, but for the accident, he would be employed at a similar job. Because it is felt that Claimant's employment opportunities were/are speculative at best, such claim for lost wages must be denied.

The Court therefore finds that the total value of this claim is $55,000.00. The above award should be reduced to $35,750.00 because Claimant is responsible for 35% of the total negligence.