ROBERT APATO et al., Plaintiffs-Appellants, v. BE MAC TRANSPORT COMPANY et al., Defendants-Appellees.

(No. 55306;

First District—October 5, 1972.

John Narusis, Jr., of Narusis & Stimson, of Chicago, for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, (D. Kendall Griffith and Dennis J. Horan, of counsel,) for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

A station wagon in which Emily Apato was a passenger was struck in the rear by a semi-trailer truck owned by Be Mac Transport Company and driven by Donald Horn. The four members of the Apato family who were in the station wagon sued Be Mac and Horn for personal injuries and one of them, Marilyn Spano, the owner of the station wagon, also sued for property damage. However, three of the plaintiffs, including Spano, took non-suits; the issue of property damage was thus dropped

from the case. Only one plaintiff, Emily Apato, continued to press her claim. The jury returned a verdict against her and she appeals contending that her motion for a directed verdict should have been allowed or, alternatively, that she should have been granted a new trial.

At about 2:00 P.M. on September 24, 1965, the two vehicles, which had been traveling south on the Dan Ryan Expressway, Chicago, turned off on the long, southwest ramp leading to the Stevenson Expressway. The station wagon was 100 to 150 feet in front of the large semi-trailer and both were going 30 to 35 miles an hour. As they approached Stevenson their speed was reduced but the distance between the vehicles was maintained. Farther on, the driver of the station wagon, the plaintiff's son Robert Apato, decreased his speed. The driver of the truck, Donald Horn, saw the taillights come on and lightly applied his foot brake. The distance between the vehicles was narrowed. Horn testified that the station wagon then came to a stop and he applied his brake "hard" but was unable to halt his truck and it bumped into the car ahead.

Robert Apato testified that he slowed down to enter the expressway. Both he and his sister, Marilyn Spano, said that their car was moving when the truck collided with it. The plaintiff, age 66, occupied the seat behind Robert; her daughter, Marilyn, sat next to her. She alleged the impact caused her to go forward and that she struck her head on the front seat.

■■ The defendants stress Horn's testimony that the station wagon came to an unexpected and unnecessary stop. But whether it did or not, the negligence of the defendants is evident. Horn admitted both at the scene of the accident and at the trial that his brakes did not hold and that when he applied them forcibly the wheel on the right side of the trailer did not lock. A driver must use every reasonable precaution to avoid a collision with the automobile ahead. In judging the proper distance to maintain between his truck and the car in front of him, Horn had the obligation to take into consideration the condition of his brakes, the weight of his vehicle and the decline in the ramp as it neared the expressway.

■■ A driver approaching from the rear has the duty to keep a safe lookout and must take into account the prospect of having to stop his vehicle suddenly. (*Barnash v. Rubovits* (1964), 46 Ill.App.2d 409, 197 N.E.2d 134.) The slowing or stopping of the station wagon might reasonably have been anticipated under the circumstances. Robert Apato was about to merge his car with the traffic on the expressway. In such a position a decrease in speed or even a stop is often necessary so that the expressway may be entered safely at the proper moment. Drivers of vehicles on converging roadways are required to adjust their vehicular

speeds and lateral positions so as to avoid a collision with other vehicles. (Ill. Rev. Stat. 1965, ch. 95½, par. 1—143.) Horn testified that there was no expressway traffic which necessitated the stop. In his cab he sat ten feet above street level which gave him a considerable advantage, not shared by Apato, in determining the presence or absence of on-coming vehicles.

■■■ If the issue of the defendants' negligence was the only one involved, a directed verdict in favor of the plaintiff would have been proper, or the grant of a new trial correct because the jury's finding for the defendants on this issue would have been manifestly against the weight of the evidence. In a negligence action, however, a verdict may be directed as to liability only when liability has been proved as a matter of law. Liability includes both negligence and injury. Whether Mrs. Apato sustained an injury was a major issue at the trial. In a negligence action the plaintiff must establish a duty owed by the defendant, a negligent act or omission by the defendant which breaches that duty and a compensable injury to the plaintiff resulting from such breach. (*Lasko v. Meier* (1946), 394 Ill. 71, 67 N.E.2d 162; *Drell v. American Nat. Bank and Trust Co.* (1965), 7 Ill.App.2d 129, 207 N.E.2d 101.) To warrant an assessment of liability, affirmative and positive proof is required that the actionable negligence was the proximate cause of the injury. (*Sansone v. Atchison, Topeka & Santa Fe R.R. Co.* (1967), 83 Ill.App.2d 435, 228 N.E.2d 101.) Even if the jury concluded that the truck driver was negligent, Mrs. Apato would not have been able to recover damages unless the jury also believed that she had been injured as a result of his negligence. *Cf. Cohen v. Sager* (1971), 2 Ill.App.3d 1018, 278 N.E.2d 453.

Despite the plaintiff's testimony that she struck her forehead upon the front seat, she sustained no external bruises and declined medical attention immediately after the accident. However, on the following day she complained of a stiff neck and, according to her daughter, was examined by her physician, Dr. John Krolikowski. On cross-examination he stated that she had suffered from a similar condition before the accident. The doctor had no written record of the examination; the only entry he had of an examination after the accident was dated October 14, 1965. He did not detect lacerations, marks or abrasions on her head or body; nevertheless, he ordered physiotherapy and X-ray examinations of her neck and shoulders.

According to the testimony, during the succeeding months the plaintiff experienced a painful right arm and severe headaches. In early December, 1965, she was hospitalized because of dizziness, abdominal pains, headaches and vomiting. An electro-encephalogram was taken which

indicated that her brain was operating slower than normal and that there was evidence of injury on the left frontal and temporal area. The cause of the injury—whether from a tumor, trauma or cerebral vascular accident—could not be determined.

For years prior to the accident the plaintiff had experienced symptoms similar to those which existed in late 1965. She was hospitalized in 1950, because of dizziness, severe headaches, high blood pressure and muscular pains. She was found to be a hypertensive, vascular-diseased patient. As early as September, 1964, her doctor prescribed treatment for the pain in her right arm believing it was caused by bursitis or arthritis. By the summer of 1965, she was experiencing headaches and considerable weakness in her right arm as well as numbness in her fingers. In August, 1965, Dr. Krolikowski, noticing changes in her physical condition and suspecting the beginning of Parkinsonism, referred her to a neuro-surgeon.

Following her hospitalization in December, 1965, the plaintiff's health gradually deteriorated. It became increasingly arduous for her to walk and take care of her personal needs. She could not lift a cup and fed herself with difficulty. After occasional periods of hospitalization for tests and treatment, she was transferred to a nursing home. Although other diagnoses of her condition were suggested she was ultimately treated for Parkinsonism, the condition Dr. Krolikowski had suspected prior to the accident.

With this evidence, the jury was presented with the factual question of whether the plaintiff's condition proximately resulted from any negligent act of the defendants. Dr. Eric Oldberg, a witness for the defendants, took the plaintiff's medical history and examined her in 1968. He testified that any trauma sustained in the accident had no connection either with the cause or aggravation of her condition, which he identified as a classic case of Parkinsonism. A witness for the plaintiff, Dr. Frank DeVincenzo, a neuro-surgeon who examined her both before and after the accident, took an opposing view, and Dr. Krolikowski stated that a connection could exist between the accident and the aggravation of the plaintiff's condition depending upon the trauma involved.

■■■ It was the plaintiff's burden to establish a causal relation between the defendant's negligence and her injury. (*Daly v. Bant* (1970), 122 Ill.App.2d 233, 258 N.E.2d 382.) The semi-trailer was moving quite slowly when it bumped into the station wagon. Very little damage was done to the wagon and none of the occupants was bruised. The similarity between the symptoms experienced by the plaintiff prior to and following the accident is striking, and the testimony that her condition was aggravated by the collision was in substantial conflict. There was ample evi-

dence for the jury to have concluded that her condition of ill-being preceded the accident and was not aggravated by it.

The trial court properly denied the plaintiff's motion for a directed verdict and her motion for a new trial. The judgment is affirmed.

Judgment affirmed.

McGLOON, P. J., and McNAMARA, J., concur.