VIOLA SLOWIK *et al.*, Plaintiffs-Appellants, *v.* PAT SCHRACK, Defendant-Appellee.

Third District   No. 78-366

Opinion filed October 11, 1979.—Rehearing denied November 8, 1979.

BARRY, J., dissenting.

Philip A. Troha, of Troha, Troha and Bednarek, of Joliet, for appellants.

Eugene N. Traunfeld, of Van Duzer, Gershon, Jordan and Petersen, of Chicago, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiffs Viola Slowik and Anna Verkich appeal from a judgment of the Circuit Court of Will County entered in favor of Pat Schrack in a personal injury action in such court. The action stemmed from an automobile accident as the result of which plaintiffs claimed they suffered injury and damages.

The trial court directed a verdict for the plaintiffs Slowik and Verkich on the issue of negligence of the defendant Schrack and, also, of freedom from contributory negligence by the plaintiffs. The trial court left for the jury the question as to damages sustained and whether the damages were proximately caused by the negligence of defendant. The jury returned a verdict in favor of defendant Pat Schrack and as against both plaintiffs. The post-trial motion filed on behalf of the plaintiffs for a new trial was denied by the court, and judgment was entered for the defendant.

Basically, the plaintiffs contend that the jury verdict has no

reasonable basis in the record and that it is, therefore, against the manifest weight of the evidence. We agree with this contention.

The record in this case discloses that the incident giving rise to the litigation occurred on December 29, 1972. The automobile being driven by plaintiff Slowik, in which plaintiff Verkich was a back-seat passenger, was stopped at a street intersection in Romeoville, Illinois. The vehicle driven by Schrack was stopped a short distance from the rear of the Slowik automobile. Defendant Pat Schrack testified that her foot slipped off the brake pedal and that her automobile moved forward a distance of two or three feet and struck the Slowik car in the rear.

Plaintiff Slowik stated that the impact pushed her forward, toward the steering wheel, and then back into the seat. She testified that she did not come into contact with any part of the interior. Plaintiff Verkich, who was 59 years old at the time of the incident, testified that she was in the back seat of the Slowik automobile which was stopped and that when it was struck from the rear, she was thrown forward and had to catch herself with her hands to prevent being thrown into the back of the front seats. She testified that no other part of her body, with the exception of her hands, actually came into contact with the interior of the automobile. Two other persons, not involved in the litigation, were also passengers in the Slowik automobile at the time of the accident.

Slowik, Verkich and Schrack all got out of the respective automobiles following the incident. Neither plaintiff complained at that time of any injury, although they both testified that they were a bit "shook up." No appreciable damage was done to either automobile. The police were not called. After the parties exchanged names and addresses and other pertinent information, they left the scene of the accident, within a period of 15 or 20 minutes after the initial impact. The plaintiffs proceeded on to Chicago for their planned activities and returned to Romeoville in the late afternoon, some three or four hours following the incident.

Viola Slowik testified that in the evening of the day of the incident, she began to feel pain in her neck and experienced difficulty in swallowing. This was confirmed by both her husband and her son. She called her family physician that evening or the following day and that physician advised her to have X rays taken. On January 2, 1973, X rays were taken at the local hospital and, thereafter, Mrs. Slowik was fitted with a cervical collar and given medication for her pain. Her physician recommended that she see an orthopedic specialist. On January 6, 1973, Mrs. Slowik met with Dr. Curtis Rentschler, who was an orthopedic specialist. Dr. Rentschler testified that Mrs. Slowik was suffering from a flexion extension type injury of the cervical spine, or, in layman's language, a "whiplash." The doctor found muscle spasm in the neck and

shoulder area. He prescribed the continued use of the cervical collar, ultrasonic treatments, a home traction unit and additional pain medication. The doctor also advised Mrs. Slowik not to return to work. The doctor noted that while Mrs. Slowik exhibited limitation of the cervical motion of her neck, and the spasm, the doctor also testified that her shoulder motion, reflexes, motor function and sensation were intact. The X rays were also normal. It was, however, Dr. Rentschler's stated opinion, that the neck injuries to Mrs. Slowik were caused by the accident on December 29, 1972. Dr. Rentschler continued to treat Mrs. Slowik for some months thereafter. The doctor also testified that Mrs. Slowik sustained additional injuries to the neck area as a result of two subsequent automobile accidents in August 1973 and in November 1974. The doctor testified that the subsequent accidents aggravated the pre-existing injury which had resulted from the December 29, 1972, accident with Pat Schrack. X rays taken in 1978 indicated a calcified mass located in the region of the neck where the original injury occurred.

The doctor testified that the calcification was caused by the December 29 accident and that plaintiff Slowik had suffered permanent injuries as a result of the accident. In his opinion, the doctor stated, Mrs. Slowik would have had such injuries without the aggravation of the subsequent two accidents. The defense offered no medical testimony in rebuttal to Dr. Rentschler's evidence. The cross-examination, by defendant, of the doctor, focused upon the fact that the X rays were normal and the ability of the doctor objectively to detect the neck pain and the failure of the doctor to record any swelling or discoloration at the initial examination. The normal alignment of the vertabrae shown by the X rays was not inconsistent with the muscle injury which Dr. Rentschler diagnosed. The doctor also indicated that an experienced orthopedic surgeon can, in certain cases, objectively determine the presence of pain by manipulating the injured area (in this case, the neck muscles of Mrs. Slowik).

As to the lack of recording swelling or discoloration in the examination which took place seven days after the accident, Dr. Rentschler testified that unless such conditions were extreme he would likely not record them. The cross-examination did not contradict significantly the testimony of the doctor or Mrs. Slowik as to the existence or cause of the injuries.

The cross-examination of Dr. Rentschler focused upon the effects that subsequent accidents could have had on the injured neck of Mrs. Slowik, as it stood at the time of trial, but such cross-examination obviously simply went to the extent of injury and damages rather than causation or the fact of the injury sustained by Mrs. Slowik. As we have noted previously, defense offered no rebuttal except for the testimony of

Pat Schrack that the impact was not severe. It is apparent from the record that the medical testimony of Dr. Rentschler, corroborating the testimony of Mrs. Slowik, was not impeached in any significant way by the cross-examination or otherwise.

Anna Verkich testified that she had begun to feel some pain in her arms and shoulders on the evening of the incident. She testified that she had no previous injury or problem in those areas prior to the accident on December 29. In that incident, she was thrown forward and caught herself on the back of the front seat with her hands. She called her physician the following day and X rays were taken at his request. She saw her doctor, Dr. Ivanicky, on January 5, 1973. Dr. Ivanicky testified that when he examined her at that time she had an edema and a hematoma in the shoulder areas which caused the pain. He testified as to severe motion limitation of the shoulders as a result of the injuries. The doctor prescribed diathermy treatment for Mrs. Verkich and a variety of pain killers, including cortisone, as well as anti-inflammatory drugs. As a result of her injuries, Mrs. Verkich saw Dr. Ivanicky on numerous occasions in the following months. Dr. Ivanicky, who had never been a medical witness in a lawsuit previously, testified that he was convinced that the injuries resulted from the accident that Mrs. Verkich was involved in on December 29. On cross-examination, Dr. Ivanicky testified that the X rays were normal. His testimony indicated that the objective symptoms, the swelling and discoloration, were consistent with the testimony of Mrs. Verkich that she caught herself when thrown forward upon impact. He also testified that within a month after the accident, the objective symptoms were gone and that his treatment thereafter, for a period of over one year, was based solely upon her subjective complaints of pain to him. The medical bills were offered and received in evidence for treatments received from Drs. Rentschler and Ivanicky, which were in the total sums of $338.15 and $1,078.06, respectively.

■■ ■ In actions where the verdict is attacked as being contrary to the manifest weight of the evidence, a court of review will examine the record to determine the basis upon which the verdict may be supported. As we have noted again, in *Ford v. Baker* (1978), 61 Ill. App. 3d 45, 48, 377 N.E.2d 853, however, the court will not substitute its judgment for that of the jury and set aside the verdict, unless there is a lack of a reasonable basis for the verdict shown in the record. Accordingly, in the instant case, we have reviewed the evidence with respect to the existence of injuries and the proximate causes of those injuries. On the basis of the record, we find no reasonable basis for the jury's decision that one or both of these elements (damage and proximate cause) were lacking in the proof presented by the plaintiffs.

We note that credibility and weight of the evidence are normally

matters left to the finder of fact. While it appears that the jury might have differed legitimately with the testimony of plaintiffs and their doctors as to the extent of the injuries and the amount of compensable damages suffered in the December 29 incident, we find no basis for totally disregarding the positive proof of the existence of the original injuries and the fact of causation. Plaintiff Slowik presented the testimony of four persons, including an orthopedic surgeon, which established that the neck pain and problems began some few hours after the incident. The evidence clearly established an injury and that the pain and resultant problems during the months following were obviously triggered by the accident. The defense offered no alternative basis for the problems and injuries complained of, and the defense suggestion that the plaintiff was faking the injuries is certainly not supported by the evidence in the record.

As we have noted previously, the defense offered no medical evidence of its own, and the testimony of the doctor and the plaintiff Slowik was not discredited in the record. While the jury could reasonably have concluded that the permanence of Mrs. Slowik's injuries were caused in part by subsequent accidents and not totally by the 1972 incident with Pat Schrack, the jury could not have reasonably concluded that the injuries did not occur or were not in fact caused, at least to some extent, by that incident involving the Pat Schrack automobile.

As to the plaintiff Anna Verkich, the evidence is even more conclusive as to injury and causation. It was clearly established and uncontradicted that the shoulder problems of Mrs. Verkich were the result of her being thrown forward by the Schrack car collision with the rear of the Slowik car and that Mrs. Verkich had to brace herself to keep from falling forward into the back of the front seat. The doctor for Mrs. Verkich found swelling and discoloration in the shoulder area, the area most likely affected by the manner in which she had to catch herself as she was thrown forward. The defense offered no alternative theory for the existence of the injury. There was no support for a contention that Mrs. Verkich was faking the injury. The testimony of Mrs. Verkich and her doctor was also clear and unimpeached.

The cases cited by the defendant in the instant cause were based upon a jury assessment of credibility (*Feldman v. Fitzpatrick* (1973), 11 Ill. App. 3d 617, 297 N.E.2d 264; *Apato v. Be Mac Transport Co.* (1972), 7 Ill. App. 3d 1099, 288 N.E.2d 683). Both involve either strong contrary evidence as to the existence of injury or effective impeachment evidence in rebuttal.

We are well aware that

"In a negligence action the plaintiff must establish a duty owed by the defendant, a negligent act or omission by the defendant which

breaches that duty and a compensable injury to the plaintiff resulting from such breach. [Citations.] To warrant an assessment of liability, affirmative and positive proof is required that the actionable negligence was the proximate cause of the injury." (*Apato v. Be Mac Transport Co.* (1972), 7 Ill. App. 3d 1099, 1102.)

In the instant case, therefore, the trial court directed a verdict as to the issues of duty and negligent act, but left to the jury the issues of injury and whether such injury was proximately caused by the Slowik automobile. The jury's verdict thereon has no reasonable basis in the record in this case, and the plaintiffs met the standards of proof for directing a verdict in the favor of plaintiffs on the issues noted.

In view of what we have determined in the opinion, the judgment of the Circuit Court of Will County in favor of the defendant is reversed and this cause is remanded for a new trial, limited only to the issue of damages.

Reversed and remanded with directions.

SCOTT, J., concurs.

Mr. JUSTICE BARRY, dissenting:

I respectfully dissent. As the majority indicates, the question of proximate causation was left for the jury's determination. The verdict returned by the jury obviously rejects the plaintiffs' testimony concerning causation. I have reviewed the record and find that the trial court did not abuse its discretion in denying the motion for a new trial by the plaintiffs. *Ryon v. Javior* (1979), 69 Ill. App. 3d 946, 386 N.E.2d 936.

The standard to be applied in this case in deciding the propriety of granting or denying a motion for a new trial is whether the evidence contained in the record supports the jury verdict by a preponderance. I agree with the jury and the trial court that it does. The jury and the trial judge obviously did not accept much of the plaintiffs' testimony, and after reviewing the entire record, nor do I.

Defendant testified there was no damage to either vehicle. Plaintiffs testified that they looked but did not recall if there was any damage to vehicles. No repair bill for either vehicle was offered. I fail to comprehend how an automobile accident which apparently resulted in no property damage could cause the allegedly grievous injuries complained of by these plaintiffs.

The jury's verdict was not erroneous. Therefore I would affirm.