**C&F PACKING CO., INC.,**
**Plaintiff–Appellant,**

v.

**IBP, INC., Defendant–Appellant,**

and

**Pizza Hut, Inc., Defendant–Appellee.**

**Nos. 99–1312, 99–1313.**

United States Court of Appeals,
Federal Circuit.

Aug. 25, 2000

Raymond P. Niro, Niro, Scavone, Haller & Niro, Chicago, Illinois, argued for plaintiff-appellant. With him on the brief were William L. Niro, John C. Janka, and Paul K. Vickrey.

Constantine L. Trela, Jr., Sidley & Austin, Chicago, Illinois, argued for defendant-appellant, IBP, Inc. With him on the brief were D. Cameron Findlay, and Joseph S. Miller.

Patricia J. Thompson, Schiff Hardin & Waite, of Chicago, Illinois, argued for defendant-appellee. With her on the brief were Roger Pascal, Julie L. Brown, and Lisa A. Brown.

Before PLAGER, CLEVENGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

The Northern District of Illinois awarded C&F Packing Co., Inc. extensive damages and prejudgment interest against IBP, Inc. for misappropriation of trade secrets. Because the district court correctly applied the law of trade secret misappropriation and damages, this court affirms these decisions against IBP. This court vacates, however, the district court's award of prejudgment interest to C&F, reverses the dismissal of C&F's claims against Pizza Hut for failure to state a claim, and remands.

## I.

C&F is an Illinois corporation that makes and sells meat products. Since the early 1970s, C&F had supplied uncooked sausage to pizza vendors, including Pizza Hut outlets. In this business, C&F perceived a need for national distribution of precooked sausage. After years of research, C&F developed a process for making and freezing precooked sausage for pizza toppings. This product had the appearance, taste, and other characteristics of freshly cooked sausage. C&F's product surpassed other precooked products in price, appearance, and taste.

On August 6, 1985, C&F filed an application for a patent on its process. This application matured into U.S. Patent No. 4,731,006 (the '006 patent) for specially designed equipment to make the sausage, and U.S. Patent No. 4,800,094 (the '094 patent) for the process itself. C&F continued to improve its process after submitting its patent application, and kept its new developments as trade secrets.

In 1985, Pizza Hut agreed to buy C&F's precooked sausage on the condition that C&F divulge its process to several other Pizza Hut suppliers, ostensibly to assure that back-up suppliers were available to Pizza Hut. In exchange for the process, Pizza Hut promised to purchase a large amount of precooked sausage from C&F. Under this agreement, C&F disclosed its process to several of Pizza Hut's suppliers. C&F entered written confidentiality agreements with these entities. C&F also leased its specialized equipment to these suppliers and invested $4.5 million in a new plant to meet Pizza Hut's needs. By early 1986, Pizza Hut's other suppliers had learned how to duplicate C&F's results. At that time, Pizza Hut told C&F that it would not purchase any more sausage without drastic price reductions.

In 1989, Pizza Hut entered into discussions with IBP about the purchase of pre-cooked sausage pizza toppings. IBP was one of Pizza Hut's largest suppliers of meat products other than sausage. Pizza Hut furnished IBP with a "specification and formulation" for sausage toppings. IBP signed a confidentiality agreement with Pizza Hut concerning this information. Pizza Hut transferred information to IBP about the sausage process in document form, and in personal discussions with IBP employees. IBP also hired a former supervisor in C&F's sausage plant as a production superintendent. IBP fired this employee five months later, by which time it had established its sausage-making process. By early 1991, Pizza Hut was buying precooked sausage topping from IBP.

On March 17, 1993, C&F sued IBP for infringement of the '094 patent. On March 22, 1993, C&F amended its complaint to add charges of inducement of infringement against Pizza Hut. In its Second Amended Complaint of May 14, 1993, C&F added claims under state law against Pizza Hut and IBP. The new claims against Pizza Hut included fraud, breach of fiduciary duty, unfair competition, unjust enrichment, tortious interference with business expectancy, and trade secret misappropriation. Count VIII of the trade secret claim, entitled "Violation of Illinois Trade Secrets Act Against Pizza Hut," consisted of a list of asserted facts. Paragraph 55 on page 21 of C&F's complaint * stated: "The confidential information which C&F entrusted to Pizza Hut included trade secrets protected by the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1, et seq." The first 54 paragraphs of the complaint listed facts which, C&F alleged, buttressed the four paragraphs describing its specific legal complaint against Pizza Hut.

IBP counter-claimed, charging that the '094 patent was invalid, unenforceable, and not infringed. For its part, Pizza Hut moved to dismiss C&F's Second Amended Complaint on the grounds that some of the claims were pre-empted by "the applicable trade secrets statute," that the claims were barred by "at most" a five-year statute of limitations, and that C&F had failed to state a claim of trade secret misappropriation against Pizza Hut because the claim had been brought under Illinois law, whereas the law of Kansas should apply.

On January 26, 1994, the District Court for the Northern District of Illinois disposed of C&F's misappropriation claim against Pizza Hut by ruling that "[b]ecause the court has determined that Kansas law governs C&F's misappropriation claims, this count is dismissed for failure to state a claim upon which relief can be granted." *C&F Packing Co. v. IBP, Inc., & Pizza Hut, Inc.,* No. 93–C–1601, 1994 WL 30540, at *5 (N.D.Ill. Feb. 1, 1994) *(C&F)*. The Kansas Uniform Trade Secret Act, Kan. Stat. Ann. § 60–3320 (1999) (KUTSA), has a three-year statute of limitations period; its Illinois equivalent has a five-year statute of limitations period. While this was enough for the district court to dismiss C&F's complaint against Pizza Hut, the court also noted that C&F should have known of misappropriation by Pizza Hut "as early as March 1986," so that "[e]ven if Pizza Hut had properly brought its claim under the Kansas … Act … the claim would be barred by the applicable statute of limitation [sic]." *Id.* The court also dismissed C&F's common law claims of fraud, breach of fiduciary duty, unfair competition, and unjust enrichment against Pizza Hut as preempted by the applicable law, KUTSA. On cross motions for summary judgment on the remaining claims, the district court granted summary judgment to IBP on the claims of tortious interference and unfair competition, leaving pending the trade secret claim against IBP and patent claims against both defendants. On March 30, 1998, the district court found that the '094 patent was invalid under 35 U.S.C. § 102(b) (1994) because the invention had been on sale more than

---

* There are two paragraphs numbered 55 in the complaint.

one year before the patent application date. The trade secret claim against IBP proceeded to trial.

In December 1998, a jury determined that IBP had misappropriated C&F's trade secrets and awarded C&F $10.9 million in damages for unjust enrichment. The district court further awarded C&F $5.1 million in prejudgment interest. IBP moved for Judgment as a Matter of Law (JMOL) in its favor. The district court denied IBP's motion; IBP appeals.

Upon dismissal of its state law claims against Pizza Hut, C&F moved the district court for leave to file a Third Amended Complaint, asking the court to reconsider its ruling that Kansas, not Illinois, law applied, and also arguing for the first time that even if Kansas law governs, the Illinois Borrowing statute (735 Ill. Comp. Stat. 5/13–210 (West 1992)) requires the application of Illinois' five-year Statute of limitations period. Without ruling on the applicability of the Illinois Borrowing statute the district court repeated its holding that C&F's claims would have been time-barred even under a five-year statute of limitations.

C&F appeals to this court the district court's dismissal of its state law complaint against Pizza Hut, arguing that "the district judge erred in summarily dismissing C&F's non-patent claims against defendant Pizza Hut as barred by the statute of limitations." C&F also appeals the district court's finding "that C&F's fraud claim was preempted by the Kansas Uniform Trade Secret Act."

## II.

■ This court reviews a district court's decision on a motion for JMOL, such as that which IBP appeals, by reapplying the JMOL standard. See *Markman v. West-view Instruments, Inc.*, 52 F.3d 967, 975, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (*en banc*).

■ In the Seventh Circuit, a district court applies state, not federal, standards for JMOL. See *Reboy v. Cozzi Iron & Metal, Inc.*, 9 F.3d 1303, 1307 (7th Cir.

1993). Under Illinois law, a motion for JMOL should be granted only if all the evidence, "analyzed in the light most favorable to the nonmovant, so clearly favor[s] the movant that no fair-minded individual could dispute the movant's right to judgment in his or her favor." *Bryant v. Glen Oaks Med. Ctr.*, 272 Ill.App.3d 640, 208 Ill.Dec. 928, 650 N.E.2d 622, 628–29 (1995). An Illinois court will not set aside a jury verdict "unless there is a lack of a reasonable basis for the verdict," *Slowik v. Schrack*, 77 Ill.App.3d 42, 32 Ill.Dec. 523, 395 N.E.2d 753, 756 (1979) (citation omitted), *i.e.*, unless it was "palpably erroneous and wholly unwarranted." *Kasovic v. Preston Trucking Co.*, 147 Ill.App.3d 448, 100 Ill.Dec. 939, 497 N.E.2d 1301, 1304 (1986) (citation omitted).

■ The jury's verdict against IBP turned on its finding that C&F possessed a trade secret which could have been misappropriated. IBP argues that a trade secret holder must corroborate the existence of a trade secret with evidence beyond the testimony of interested parties. IBP bases its argument in what it calls the "analogous context" of patent priority contests, citing *Cooper v. Goldfarb*, 154 F.3d 1321, 1330, 47 USPQ2d 1896, 1903 (Fed.Cir. 1998) (holding that inventor's date of reduction to practice requires independent corroboration) and *Price v. Symsek*, 988 F.2d 1187, 1194, 26 USPQ2d 1031, 1036 (Fed.Cir.1993) (explaining that corroboration is needed for inventor's testimony of conception). Patent interference law, however, is concerned with priority of invention and does not set the standard for detecting the existence of a trade secret. In a patent priority contest it is the timing of inventive activities and the diligence of a putative inventor that is in issue, not the existence of the invention itself. *See id.*

■ Rather than apply inapposite patent law requirements, this court looks to the trade secret law of the relevant state in misappropriation cases. See *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 670, 7 USPQ2d 1097, 1105 (Fed.Cir.1988).

Thus, the Illinois Trade Secrets Act (ITSA), enacted in 1988, 765 Ill. Comp. Stat. § 1065 (West 1995) (formerly Ill.Rev. Stat.1991, ch. 140, para. 351–59) and the common law of Illinois govern this case. *See Roton Barrier, Inc. v. Stanley Works,* 79 F.3d 1112, 1116–17, 37 USPQ2d 1816, 1819 (Fed.Cir.1996). Section 2 of the ITSA provides that:

 (d) "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

 (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

 (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 Ill. Comp. Stat. § 1065/2(d) (West 1995). Section 2(d)(2) of the ITSA parallels the common law factors for identifying a trade secret:

 (1) the extent to which the information is known outside the employer's business;

 (2) the extent to which it is known by employees and others involved in the business;

 (3) the extent of measures taken by the employer to guard the secrecy of the information;

 (4) the value of the information to the employer and his or her competitors;

 (5) the amount of effort or money expended by the employer in developing the information; and

 (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Stampede Tool Warehouse, Inc. v. May,* 272 Ill.App.3d 580, 209 Ill.Dec. 281, 651 N.E.2d 209, 215–16 (1995). In their definitions of "trade secret," both the ITSA and the common law emphasize the characteristic of secrecy attached to confidential information. *See Service Ctrs. of Chicago, Inc. v. Minogue,* 180 Ill.App.3d 447, 129 Ill.Dec. 367, 535 N.E.2d 1132, 1136 (1989). "Secrecy" may be measured by "the ease with which information can be developed through proper means: if the information can be readily duplicated without involving considerable time, effort or expense, then it is not secret." *Hamer Holding Group, Inc. v. Elmore,* 202 Ill.App.3d 994, 148 Ill.Dec. 310, 560 N.E.2d 907, 918 (1990).

Under Illinois law, the trial jury was presented with substantial evidence that C&F possessed trade secrets. The jury heard the testimony of Joseph and Gerry Freda, the alleged inventors of the process and owners of C&F, about the time, expense, and effort required to develop the secrets and keep them confidential. Dr. Peter Clark testified that he had seen the secret process in use at C&F in 1988. He further testified about the difficulty of developing the combination of parameters that made the secret process successful. Mr. Layhee, an IBP executive, acknowledged that it would take "years and years" to refine such a process. Indeed, other companies, including other Pizza Hut suppliers, had not developed a workable process for making precooked Italian sausage pizza topping before C&F's process. Kevin McDaniel, the former C&F supervisor who had been hired by IBP, told the jury that he had solved production problems at IBP by applying techniques he had learned at C&F. The record also includes the deposition testimony of Pizza Hut's vice-president for purchasing, who said that Pizza Hut had asked its other suppliers to duplicate C&F's process, but they could not, and that Pizza Hut's suppliers were instructed to keep the C&F process secret once Pizza Hut had disclosed it to them. Al Killian, another Pizza Hut executive, revealed Pizza Hut's efforts to learn the C&F trade secrets.

Thus, the record evidence tracks closely the six factors for detecting a trade secret in the *Stampede Tool Warehouse* case. *See* 209 Ill.Dec. 281, 651 N.E.2d at 215–16. Under the first and second factors, the record supplies sufficient evidence for a reasonable juror to conclude that C&F's process was confidential until divulged to Pizza Hut and its suppliers under written secrecy agreements. Under the third factor, the record shows that C&F took suitable precautions, including written agreements with Pizza Hut suppliers and cautions to employees, to guard the secrecy of its process. Under the fourth factor, the record substantiates that Pizza Hut and its suppliers obtained economic value from the use of C&F's process. Under the fifth factor, the record discloses that C&F expended a considerable amount of effort and money to develop its process. And finally, under the sixth factor, the record shows that competitors would have found it difficult and expensive to duplicate the process. Therefore, the record supports the jury's verdict that C&F possessed trade secrets.

### III.

■ IBP contends that the district court committed prejudicial error by giving the jury the following instruction:

> Trade secret misappropriation may also occur or be facilitated by placing a person who has legitimate knowledge of trade secrets in a position that may inherently call for disclosure or use. However, employing a competitor's former employee is not in and of itself sufficient to find misappropriation. An employee cannot be prevented from using his general skills or experience, even if they were obtained or developed while working for another employer.

Because the first sentence above suggests only the potential for misappropriation, IBP argues that this instruction confuses potential misappropriation with actual misappropriation.

■ In reviewing the correctness of jury instructions, the United States Court of Appeals for the Seventh Circuit "look[s] to the instructions as a whole, in a common sense manner, avoiding fastidiousness, inquiring whether the correct message was conveyed to the jury reasonably well." *Wilk v. American Med. Ass'n*, 719 F.2d 207, 218 (7th Cir.1983). If the instruction does not convey the correct message to the jury reasonably well, then a reviewing court must ask whether the misleading instruction prejudiced the complaining party. *See Dawson v. New York Life Ins. Co.*, 135 F.3d 1158, 1165 (7th Cir.1998).

Although the first sentence of the instruction here uses the rather loose phrase "misappropriation may also occur," the instruction as a whole reasonably conveys the correct message to the jury. Indeed, the first sentence of the instruction introduces the second sentence, which specifically cautions the jury against jumping to the conclusion that employing a competitor's former employee is by itself enough to establish misappropriation. Because IBP hired, and put to work on its precooked Italian sausage project, a former C&F employee who testified about his use of information from C&F while helping IBP refine its process, the instruction's direct caution works in IBP's favor. Moreover, the entire context cures any misapprehension arising from the loose language in the first sentence. In context, the jury instruction neither misleads the jury nor prejudices IBP.

### IV.

■ IBP contests the jury's award of $10.9 million to C&F for unjust enrichment because, it alleges, the jury's damages formula erroneously assumed that IBP would make no profits on precooked sausage toppings made without using the misappropriated trade secrets. IBP also suggests that the damages formula did not properly account for IBP's costs. These costs included the cost of sausage casings, water, electricity, glycol, carbon dioxide, quality control, payments to USDA inspectors, labor costs, and capital cost.

■ The assessment of damages for misappropriation of trade secrets in Illinois is governed by Section 4(a) of the ITSA: "[A] person is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." 765 Ill. Comp. Stat. § 1065/4(a) (West 1995). In Illinois, reviewing courts can reverse a jury verdict only if it is against the manifest weight of the evidence, the jury ignored a proven element of damages, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered. See *Profit Management Dev., Inc. v. Jacobson, Brandvik & Anderson, Ltd.*, 309 Ill.App.3d 289, 242 Ill.Dec. 547, 721 N.E.2d 826, 840 (1999).

■ In setting damages, the jury's function is to weigh contradictory evidence, to judge the credibility of the witnesses, and to resolve factual disputes. See *id.* The jury here resolved factual disputes about the value of C&F's trade secrets. IBP's experts testified that C&F's trade secret information was only about thirty percent of that needed to make precooked sausage. The same testimony suggested that C&F's trade secrets at most gave IBP a ninety-day head start on making its own process operational. On the other hand, the jury heard C&F's expert attribute all of IBP's profit from precooked sausage to C&F's trade secrets. In conjunction with other evidence offered by the former C&F (and IBP) employee, as well as the developers of C&F's process and IBP's marketing and liaison personnel, the jury ultimately concluded that it believed C&F's arguments. The record does not show that the jury's damages award resulted from passion or prejudice, nor that the award bears no reasonable relationship to the loss suffered. The jury calculated IBP's profits from IBP's own financial reports for 1991–1995, and reasonably extrapolated from those figures amounts for 1996 and 1997, years for which records were not available. IBP does not contest these calculations. The jury calculated the $10.9 million award on the basis of $70 million in sales and, over C&F's objection, made no allowance for IBP's possible future use of C&F's process.

Even though IBP objects to the jury's accounting for IBP's costs, the jury calculated damages under a jury instruction proposed by IBP:

> In determining IBP's profits, you must determine IBP's actual gain. That means you must start with IBP's sales ... using the claimed trade secrets, then you must subtract from those sales all the costs incurred by IBP that were attributable to making the sales. You can consider the testimony of the two damages experts ... in deciding what costs are properly attributable to IBP's Italian sausage pizza topping sales.

This instruction expressly directed the jury to deduct IBP's costs. The record as a whole does not show that the jury ignored this instruction.

IBP argues that it can profitably sell precooked sausage topping even without C&F's trade secrets, but not having tried, its suggestion is speculation. IBP's sales figures presented at trial did not identify any sausage products made without using C&F's trade secrets.

Finally, IBP argues that it "could have used" the process publicly disclosed in C&F's '094 patent, instead of the secret process, to make its product. However, again, the record does not show that IBP was able to, and did, produce precooked sausage topping of the quality required by its customer without use of C&F's trade secrets.

■ C&F did not have a burden to show damages for lost profits "to a mathematical certainty," but rather had only to show a reasonable basis for its computation. See *Hemken v. First Nat'l Bank of Litchfield*, 76 Ill.App.3d 23, 31 Ill.Dec. 666, 394 N.E.2d 868, 872 (1979). Therefore, on the basis of the record, this court con-

cludes that the jury's assessment of damages was not manifestly erroneous or unreasonable.

## V.

The district court awarded C&F $5.1 million in prejudgment interest from IBP "as a matter of fairness and equity." Under Illinois law, a party may generally recover prejudgment interest only by express agreement or by statutory authorization, *see Continental Cas. Co. v. Commonwealth Edison Co.*, 286 Ill.App.3d 572, 221 Ill.Dec. 807, 676 N.E.2d 328, 331 (1997), or if it is "warranted by equitable considerations," *Movitz v. First National Bank*, 982 F.Supp. 566, 568 (N.D.Ill.1997). In the absence of an express agreement, IBP argues that the award of prejudgment interest depends solely on the equity exception, and that this exception is not justified because IBP had no fiduciary or confidential obligations to C&F.

The district court found statutory authority for prejudgment interest in the ITSA's authorization of damages for "both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." ITSA, 765 Ill. Comp. Stat. 1065/4(a) (West 1995). However, the ITSA does not incorporate a specific provision for prejudgment interest. Illinois law requires an express provision beyond a statutory grant to provide "fair and just compensation." *See, e.g., Robles v. CTA*, 235 Ill.App.3d 121, 176 Ill.Dec. 171, 601 N.E.2d 869, 882 (1992) (holding that there is no authorization for prejudgment interest in "fair and just compensation" provision of Illinois Wrongful Death Act); *Johnson v. Human Rights Comm'n*, 173 Ill.App.3d 564, 123 Ill.Dec. 245, 527 N.E.2d 883, 885 (1988) (holding that there is no authorization for prejudgment interest under statute authorizing any action "to make the individual complainant whole"). The district court also consulted patent and trademark cases to support its award of prejudgment interest. *See General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655, 103 S.Ct. 2058, 2062, 76 L.Ed.2d

211 (1983); *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1250, 9 USPQ2d 1913, 1931 (Fed.Cir.1989). However, these cases are not relevant because in patent cases 35 U.S.C. § 284 (1994) expressly authorizes interest to provide complete compensation for an aggrieved patent owner. *See General Motors*, 461 U.S. at 655, 103 S.Ct. at 2062; *see also, Ristvedt–Johnson, Inc. v. Brandt, Inc.*, 805 F.Supp. 557, 568–69 (N.D.Ill.1992). The district court correctly noted that, in *Richardson*, this court detected "no reason why damages for misappropriated trade secrets should be treated differently from damages for patent infringement." *Richardson*, 868 F.2d at 1250. *Richardson*, however, differs from this case. In *Richardson*, the inventor had entered into a one year Option and License Agreement with Suzuki, which included confidentiality provisions. Thus, Suzuki had been in a fiduciary relationship with the inventor, a situation that does not apply here and which has special importance for judgments in equity. After dropping the option, Suzuki adopted its own name for the invention, used it in competitive racing, and sold it with great success. *See id.* at 1232–33.

In Illinois, the award of prejudgment interest is reviewed for abuse of discretion. *See Roton*, 79 F.3d at 1123. Further, in Illinois in general no right to receive prejudgment interest arises unless expressly authorized by statute or by an existing agreement between the parties. However, interest upon a recovery may be permitted irrespective of a statute if a fiduciary or confidential relationship existed and was violated. *See In re Marriage of Pitulla*, 202 Ill.App.3d 103, 147 Ill.Dec. 479, 559 N.E.2d 819, 831 (1990); *see also In re Estate of Wernick*, 127 Ill.2d 61, 129 Ill.Dec. 111, 535 N.E.2d 876, 888 (1989); *Kerasotes v. Estate of Kerasotes*, 238 Ill. App.3d 1020, 178 Ill.Dec. 849, 605 N.E.2d 643, 651 (1992). In this case there was no direct relationship between C&F and IBP, much less a fiduciary relationship. Therefore, the district court committed an abuse

of discretion in its award of prejudgment interest.

## VI.

C&F appeals to this court the district court's dismissal of its state law claims against Pizza Hut. In its opening brief C&F argues that "the district judge erred in summarily dismissing C&F's non-patent claims against defendant Pizza Hut as barred by the statute of limitations." The district court's opinion states that C&F's state law claims were dismissed for failure to state a claim, because the court determined that Kansas law governed, while C&F alleged in its second amended complaint that Pizza Hut had violated the ITSA, rather than the KUTSA. *See C&F,* at *5. The choice of the proper trade secrets act affects this case primarily through the statute of limitations.

The question of whether a Rule 12(b)(6) motion was properly granted is a purely procedural question not pertaining to patent law, to which this court applies the rule of the regional, in this case the Seventh, circuit. See *Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359, 50 USPQ2d 1672, 1675 (Fed. Cir.1999) (*en banc* in relevant part). The United States Court of Appeals for the Seventh Circuit reviews dismissals under Rule 12(b)(6) *de novo.* See *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir.1995). Citing *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 373, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) ("The basic purpose of the Federal Rules is to administer justice through fair trials not summary dismissals."), the Seventh Circuit believes that bona fide complaints should be brought to trial on the merits. *See United Milk Prods. Co. v. Michigan Ave. Nat'l Bank,* 401 F.2d 14, 17 (7th Cir.1968). A complaint need not specify the correct legal theory, or point to the right statute, to survive a motion to dismiss. *See Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1134–35 (7th Cir.1992). A complaint merely describes the claim:

> [D]etails of both fact and law come later, in other documents. Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations.... But the complaint need not identify a legal theory; and specifying an incorrect theory is not fatal.

*Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992). In the landmark case of *Conley v. Gibson,* the Supreme Court explained: "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The high standards for dismissal under Rule 12(b)(6) as interpreted by the Supreme Court and the Seventh Circuit are not met by the facts of this case. C&F stated in its Second Amended Complaint a justification for selecting Illinois law for its trade secret case against Pizza Hut, namely Pizza Hut's transaction of business in that state, in which it owns, operates, and franchises a chain of fast food restaurants. C&F alleged a substantial body of facts to support the allegations in its complaint. These facts were neither vague nor lacking in detail; but even vagueness or lack of detail is inadequate basis for granting a motion to dismiss. See *McMath v. City of Gary, Ind.,* 976 F.2d 1026, 1031 (7th Cir. 1992). If C&F chose, in the district court's view, the law of the wrong state under which to bring its claim, such a mistake is akin to that of bringing a case under an incorrect legal theory. C&F presented sufficient facts to demonstrate that the claim at least was plausible, under the law of either Kansas or Illinois, and the district court should have proceeded to try the case on its merits under the state law it found more appropriate.

## VII.

This court notes, but does not endorse, the district court's statement in *dic-*

*tum* that the court would have dismissed C&F's claim against Pizza Hut "even if" it had been brought under what that court decided was the proper state law. The district court explained this statement by its conclusion that "C&F should have known about the misappropriation as early as March of 1986, more than seven years before it finally filed its complaint." *C&F,* at *5. The district court thus foreshadows a possible verdict upon remand.

This court does not endorse the district court's *dictum* since C&F's complaint cannot be interpreted as unambiguously asserting that the misappropriation occurred when Pizza Hut acquired the trade secrets in 1986, *i.e.,* that C&F knew that Pizza Hut was acquiring C&F's trade secrets for improper purposes. Nevertheless, the district court so reasoned, and stated that C&F then "should have been on notice that Pizza Hut had misappropriated its secret process." *C&F,* at *4. However, the record, particularly the record upon which dismissal is based, which requires drawing all reasonable inferences from the facts in C&F's favor, *see Arazie v. Mullane,* 2 F.3d 1456, 1465 (7th Cir.1993), does not show that, in 1986, Pizza Hut was acquiring C&F's trade secrets by improper means for an improper purpose. Moreover, nothing in Pizza Hut's 1986 negotiation would have informed C&F of an intention by Pizza Hut to divulge trade secrets to IBP.

The record does not support any definitive conclusion on an accrual date, when Pizza Hut misappropriated the trade secrets. The trial record suggests to this court that Pizza Hut committed a misappropriation under KUTSA in 1989. The record suggests that Pizza Hut disclosed trade secrets to IBP in 1989 knowing of confidentiality agreements barring their compromise.

KUTSA specifies that "[a]n action for misappropriation must be brought within three years after the misappropriation *is discovered or by the exercise of reasonable diligence should have been discovered.*" Kan. Stat. Ann. § 60–3325 (1999) (emphasis added). Evidence in the record sug-

gests several dates on which C&F knew or could have known about the misappropriation: (a) in 1990, when Pizza Hut and IBP reached an agreement to proceed with plans for a sausage-making process; (b) in 1991, when Pizza Hut approved IBP as a supplier; (c) in 1992, when C&F learned that IBP was making precooked sausage; or (d) in 1993, when C&F inspected the IBP factory.

 Kansas law dictates that "[w]here there is evidence in dispute as to when the plaintiff's injury first became reasonably ascertainable, the question is one for the trier of fact." *McCaffree Fin. Corp. v. Nunnink,* 18 Kan.App.2d 40, 847 P.2d 1321, 1331 (1993) (quotation marks and citation omitted). Therefore, this court remands for further fact-finding on the timing of accrual of the cause of action for misappropriation and the application of the statute of limitations.

## VIII.

 The district court found that KUTSA preempted C&F's fraud claim because KUTSA "displaces conflicting tort, restitutionary, and other laws of this state pertaining to civil liability for misappropriation of a trade secret." Kan. Stat. Ann. § 60–3326(a). The district court found that Pizza Hut's alleged fraud based upon alleged "knowingly false promises" and "acts of concealment" to be indistinguishable from its trade secret misappropriation. *See, e.g., Thomas & Betts Corp. v. Panduit Corp.,* 108 F.Supp.2d 968, 973 (N.D.Ill.2000) (claims are preempted "to the extent they are based on a misappropriation of trade secrets"); *Hutchison v. KFC Corp.,* 809 F.Supp. 68, 71 (D.Nev. 1992) (unjust enrichment and unfair competition claims preempted); *Precision Screen Machines, Inc. v. Elexon, Inc.,* 1996 WL 495564, at *4 (N.D.Ill.1996) (tortious breach of a confidential relationship preempted). This court detects no reversible error in the trial court's conclusion.

## IX.

This court affirms the district court's decisions that C&F did possess trade secrets and upholds the trial court's jury instructions. This court affirms the district court's award of damages against IBP for misappropriation but reverses its award of prejudgment interest. This court also affirms the district court's decision that KUTSA preempts C&F's fraud claim against Pizza Hut. Finally, this court reverses the decision of the district court to dismiss for failure to state a claim upon which relief may be granted, and that C&F's misappropriation claim against Pizza Hut is thus barred by the appropriate statute of limitations, and remands for further proceedings in accord with this opinion.

### COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART, VACATED–IN–PART, REVERSED–IN–PART, and REMANDED*